74 N.J. Super. 1 (1962)
180 A.2d 387
BOROUGH OF NEW SHREWSBURY, PLAINTIFF-RESPONDENT,
v.
BLOCK 115. LOT 4, ASSESSED TO WILLIAM HATHAWAY AND OTHER LANDS, HERBERT HARVEY, PETITIONER-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 2, 1962.
Decided April 18, 1962.
*3 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. William H. Burns, Jr., argued the cause for appellant (Messrs. Kantor & Burns, attorneys).
Mr. Patrick J. McGann, Jr., argued the cause for respondent (Messrs. Reussille, Cornwell, Mausner & Carotenuto, attorneys).
The opinion of the court was delivered by KILKENNY, J.A.D.
Herbert Harvey appeals from an order of the Chancery Division made on November 13, 1961, denying his motion to reopen a final judgment entered in favor of the plaintiff on June 16, 1961, in a tax foreclosure proceeding brought by the borough pursuant to the In Rem Tax Foreclosure Act, N.J.S.A. 54:5-104.29 et seq. Harvey's motion, notice of which was served on October 13, 1961, was denied on the ground that it was out of time under N.J.S.A. 54:5-104.67 and R.R. 4:62-2.
On April 12, 1961 plaintiff filed its complaint, in which it sought foreclosure of several tax sale certificates, including one covering Block 115, Lot 4, assessed to William Hathaway.
On June 7, 1961 plaintiff's tax collector executed an affidavit of nonredemption. The attorney handling the foreclosure for the municipality sent this affidavit to the State Capitol Title and Abstract Company to be checked and, if found correct, to be filed, since a certificate of regularity was being sought from that company. The affidavit was returned by the company for the deletion of one of the parcels, not the subject property, because Mr. Harvey had filed an answer as to that lot, claiming an interest *4 therein and disputing the amount needed for redemption. The deletion of the one item was made and the affidavit, without re-execution so far as we are aware, together with a form of final judgment, was returned on June 13, 1961 to the aforesaid title and abstract company to be checked and filed. We do not pass on the propriety of modifying an affidavit without re-execution, but in view of our conclusion hereinafter leave that matter to the trial court. This affidavit was then filed on June 16, 1961 and on the same day judgment was entered in favor of the plaintiff as to the several certificates, including one affecting Block 115, Lot 4, but not as to the one covered by Harvey's answer.
On June 13, 1961 Herbert Harvey appeared at the office of plaintiff's tax collector, exhibited an unrecorded deed of that date from Elizabeth Green to Hudson Trading Corporation, stated that the deed covered Block 115, Lot 4, and stated that he wanted to redeem that lot because he held a mortgage from Hudson Trading Corporation which covered that property. An affidavit by Harvey asserts that Elizabeth Green had inherited the property by virtue of a devise by William Hathaway to Annie H. Green and by a devise from the latter to Elizabeth Green. Harvey tendered $600 in cash to the tax collector, the advertised amount to redeem being $506.89 besides fees and costs to be added. Thereupon, as the tax collector says in her affidavit, used in opposition to Harvey's motion:
"The last record owner of the property which was being foreclosed as shown on the tax books was William Hathaway. I did not know that an Elizabeth Green had any interest in the property. I did not know that the deed description covered the same property that was being foreclosed. I did not know  be-yond his say-so  that Herbert Harvey had any interest in the property, and frankly, from the manner of his approach, I couldn't help but think something might be amiss somewhere. I did know that the Borough would be entitled to an additional sum for fees and costs but I did not know how much at that time. I had been under instructions from Mr. Mausner, the Borough Attorney, in prior In Rem foreclosures, to be sure that if anyone tried to redeem any of the *5 parcels, not to accept any monies unless I was sure the person tendering the same had an interest in the property. For these reasons, I told Mr. Harvey that I would not accept any monies until I contacted Mr. Mausner. While Mr. Harvey was there, I attempted to do so, but was unable to reach him."
Later the same day, Harvey went to the office of Mr. Mausner, the borough attorney, but neither the attorney nor his secretary was there at that time. The foreclosure proceeding was actually being handled by one of Mr. Mausner's partners, Patrick J. McGann, Jr. Apparently, Mr. McGann mailed back the corrected affidavit on June 13, 1961 without knowledge of Harvey's attempt to redeem on that date. Harvey returned the next day, June 14, 1961, to the borough attorney's office and spoke to his secretary, in the absence of Mr. Mausner. He told her that he had made tender of payment the previous day at the tax office, showed her the cash and offered to make the payment then and there, but the secretary would not accept the money. He alleged in his affidavit that he exhibited to her the deed and his mortgage and asked her to communicate these circumstances immediately to Mr. Mausner so that they "would not enter judgment against the property on the theory that no redemption had been made."
The next day, June 15, 1961, Harvey wrote a letter to Mr. Mausner and therein confirmed his aforesaid efforts to redeem on June 13 at the tax collector's office and by attendance at Mr. Mausner's office on the two occasions. He furnished particulars in this letter as to his right to redeem by tracing the devolution of title from William Hathaway down to Elizabeth Green and her deed of June 13, 1961 to Hudson Trading Corporation, from whom he had acquired a mortgage, even giving the book and page in which the mortgage was recorded. That letter then stated:
"I am concerned, of course, to make this redemption and to bring the matter to your attention before you take any further steps to enter final judgment in your tax foreclosure, so that you can exclude Schedule #1 from your proceedings. Also I am concerned to complete the redemption as soon as possible.
*6 It will be appreciated if you will make such arrangements as may be necessary so that the tax collector will accept the redemption money, and also furnish me with a statement of the exact amount due to redeem."
Mr. Mausner admittedly received that letter and read it "sometime between June 16 and June 19."
Mausner's reply letter of June 22, 1961 informed Harvey that judgment had been entered. Notwithstanding, he inquired therein:
"Could you, perhaps, furnish me with some additional information regarding Hudson Trading Corporation, when it was formed, the nature of the indebtedness, when it was incurred and the balance presently due."
Then, without referring to Harvey's efforts to redeem before judgment was entered or his request for a statement of the exact amount due to redeem, Mausner concluded rather vaguely and somewhat pointlessly in this reply letter:
"As you know, in an In Rem foreclosure, we are only concerned with the last owner of record, which is William Hathaway."
Thereafter, on July 6, 1961, Harvey's attorney, Harold Stern, wrote to Mr. Mausner, noting that final judgment had been entered despite Harvey's efforts to effect redemption prior to entry of judgment. Mr. Stern advised Mr. Mausner that "any person in interest may redeem at any time prior to the entry of Final Judgment" and felt that entry of judgment "was inadvertent." He requested advice that "this oversight" would be rectified. Mr. Mausner's reply letter of July 11, 1961 stated that he was "still awaiting a reply to my letter from Mr. Harvey" and asked, "Will either you or he furnish me with the information requested?"
Stern answered by letter of July 27, 1961 and therein furnished the particulars requested in Mausner's letter to Harvey of June 22, 1961. Although he was given this solicited information, Mausner made no further reply. *7 Despite this, Harvey and his attorney did nothing to enforce Harvey's claimed right to redeem until the notice of motion to reopen the judgment was served on October 13, 1961, with the result first noted above.
In his letter of July 27 to Mausner, Stern manifested his awareness of a time limitation within which to move to reopen the judgment which both he and Harvey knew had already been entered, when he said:
"Will you kindly advise me as soon as possible what you intend doing in this matter, because if you do not intend to co-operate I will have to come in on a motion to re-open the judgment and same must be presented within three months of the date of the Final Judgment."
Stern stated in an affidavit supporting the motion to reopen that he contacted Mr. Mausner by telephone during the month of August 1961 concerning his intentions in the matter and was informed by Mausner that "he did not have his file handy and that he would look into this matter and would advise me if he was going to voluntarily re-open the judgment or whether I would have to file a motion," and he "never received any word from Mr. Mausner either by letter or telephone regarding his intentions."
Mr. Mausner's affidavit does not deny these allegations by Stern but refers to information received by him from his partner, Mr. McGann, to the effect that Mr. McGann told Mr. Stern on two occasions during the summer months in the Record Room in the Monmouth County Clerk's Office that "he felt the Borough would resist any attempt to reopen the judgment." Mr. McGann's affidavit supports this recital in Mausner's affidavit. Mr. Stern admits conversations with Mr. McGann relating to the possibility of reopening this judgment, but asserts that "at no time was I told by either Mr. Mausner or Mr. McGann that there would be no voluntary reopening of this judgment. My conversations were with Mr. McGann who advised me that he would have to discuss the matter with Mr. Mausner."
*8 The narrow issue before us on this appeal is whether the trial court properly denied Harvey's motion to reopen this tax foreclosure judgment on the ground that it was not made within time. The time within which to make such a motion in this type of case is regulated both by statute and by rule of the court. N.J.S.A. 54:5-104.67 provides:
"No application shall be entertained to reopen such judgment after three months from the date of the recording thereof in the office of the county recording officer, and then only upon the grounds of lack of jurisdiction or fraud in the conduct of the action."
On the other hand, R.R. 4:62-2, so far as pertinent here, provides:
"On motion, with briefs, and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: * * * (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; * * * (f) any other reason justifying relief from the operation of the judgment or order. The motion shall be made within a reasonable time, and for reasons (a), (b) and (c) not more than 1 year after the judgment, order or proceeding was entered or taken."
In Teaneck Tp. v. Block 427, Lots 9-10, 19 N.J. 386, 392 (1955), the court referred to but found it unnecessary to decide whether N.J.S.A. 54:5-104.67 or R.R. 4:62-2 governs a motion to reopen a judgment under the In Rem Tax Foreclosure Act.
A motion to reopen a judgment is a matter of practice and procedure and subject, therefore, to the rule-making power of the Supreme Court. New Jersey Constitution of 1947, Article VI, Section II, paragraph 3. When a statutory provision and a rule of the court are in conflict in a matter of practice and procedure, the rule prevails. Winberry v. Salisbury, 5 N.J. 240 (1950), cert. den. 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950). However, as Justice Jacobs states in his dissenting opinion in State v. Otis Elevator Co., 12 N.J. 1, 25 (1953), "the doctrine of judicial supremacy in rule-making ought, as a matter *9 of comity towards the Legislature, be accompanied by fair recognition of important statutory policies in fields which are of special legislative concern."
The In Rem Tax Foreclosure Act, N.J.S.A. 54:5-104.29 et seq., involves an area of special legislative concern, dealing as it does with the matter of enforcing the collection of municipal taxes and the settlement of tax title liens. In fact, the Legislature took pains to express that concern by stating in N.J.S.A. 54:5-104.31:
"This act shall be liberally construed as remedial legislation to encourage the barring of rights of redemption, * * *."
While we hold that R.R. 4:62-2 controls motions to reopen judgments, including one obtained under the In Rem Tax Foreclosure Act, yet in construing what is a "reasonable time" under the rule, judicial deference ought to be paid to the Legislature's expression of public policy, fixing a three months' time limitation for making such a motion in a tax foreclosure proceeding, except where the ground is fraud or lack of jurisdiction. While N.J.S.A. 54:5-104.67 is not carefully drawn, we interpret it to mean that the three months' limitation applies to all grounds other than "lack of jurisdiction or fraud," by construing the word "then" as meaning "thereafter." See Lakewood Tp. v. Block 251, Parcel 34, 48 N.J. Super. 581, 586 (App. Div. 1958).
Harvey contends that the "plaintiff procured the entry of judgment on a stale affidavit, which was untrue as of the time the request for entry of judgment was made, to the knowledge of the municipal tax collector and the municipal attorneys." He maintains that this was a "fraud under the statute and that the three month bar is not applicable." In the alternative, he argues that if this conduct be considered not fraudulent, it should, at least, "be denominated misconduct within the purview of R.R. 4:62-2(c), which allows a period of one year for the relief sought." Harvey acknowledges that "relief under this rule is discretionary," *10 but urges that "the failure to grant such relief was an abuse of discretion."
It is true that the three months' limitation under N.J.S.A. 54:5-104.67 does not apply when the ground urged for reopening a tax foreclosure judgment is "fraud in the conduct of the action." It is also true that under R.R. 4:62-2 the maximum time within which one may move to reopen a judgment for fraud or misconduct of an adverse party is "1 year after the judgment," which maximum had not yet expired in the instant case when the motion to reopen was made. Thus, the issue reduces itself to a determination of whether plaintiff was guilty of fraud or misconduct in entering the judgment and whether the circumstances as to the negotiations between Harvey and his attorney and the municipal representatives with respect to redemption were such as to make it inequitable to bar the motion to reopen as not having been made within a reasonable time under R.R. 4:62-2.
The matter was submitted to the trial court on affidavits, copies of correspondence, and a terse agreed statement of some of the facts. However, the affidavits reflect some important factual conflicts and are vague or incomplete as to other facts which ought to be known before it can be determined whether Harvey's motion to reopen was made within a reasonable time under R.R. 4:62-2. We deem it necessary, therefore, to remand this matter to the trial court for a plenary hearing and a determination as to whether under all the facts and circumstances of the case it would be inequitable to apply the three months' limitation as a bar to Harvey's motion to reopen the judgment. Such a factual determination and conclusion cannot be made by us on the basis of the present inadequate record before us.
The trial court should consider, in addition to any other pertinent facts, whether it was proper to modify and file said affidavit without having it re-executed, and to enter judgment thereon without further inquiry by the tax collector *11 or municipal attorney whether Harvey's claim of redemption was well founded; and (under the circumstances attending the entry of the judgment, after Harvey's tender) whether the validity of Harvey's claim should have been investigated, and whether it was not plaintiff's duty (if Harvey's claim proved valid) to reopen the judgment, or to advise the court of the facts. Secondly, it should be determined whether the conduct of plaintiff's attorneys after the judgment was entered, in asking Harvey and later his attorney for information, which was supplied without any reply thereto, and Mausner's alleged verbal promise to Stern in August 1961 (if found as a fact), only a few weeks before the three months' time would expire within which to move to reopen, lulled Stern and his client into a false position of security in delaying the motion to reopen so as to have made it inequitable to apply the three months' limitation in this case.
If, after such a plenary hearing and specific findings of the facts in relation to the matters referred to above, the trial court concludes from all the circumstances that Harvey's motion to reopen the judgment was not made within a reasonable time, then it will enter an order confirming its previous order denying the motion to reopen. On the other hand, if it is determined on the basis of the more complete record that Harvey's motion was made within a reasonable time, notwithstanding N.J.S.A. 54:5-104.67, an order should be made reopening the judgment of June 16, 1961, but without prejudice to the right of the Borough to put Harvey to his proof that he did and does have a right to redeem the particular lot in issue.
The order denying Harvey's motion to reopen the judgment is reversed and the matter is remanded to the Chancery Division for further proceedings consistent herewith. We do not retain jurisdiction of the appeal for any purpose. Compare, Quiles v. New Jersey Metals Company, 37 N.J. 91 (1962).