836 A.2d 779

AGOSTINO FERREIRA AND MARGARIDA FERREIRA, H/W, PLAINTIFFS-APPELLANTS, v. RANCOCAS ORTHOPEDIC ASSOCIATES AND BRUCE W. WULFSBERG, M.D., DEFENDANTS-RESPONDENTS.

Argued March 3, 2003—Reargued September 22, 2003—Decided November 24, 2003.

*Mark R. Cuker,* argued the cause for appellants (*Williams Cuker & Berezofsky,* attorneys).

*Jeremy P. Cooley,* argued the cause for respondents (*Lenox, Socey, Wilgus, Formidoni, Brown, Giordano & Casey,* attorneys).

*Abbott S. Brown,* argued the cause for *amicus curiae,* Association of Trial Lawyers of America–New Jersey (*Bendit Weinstock,* attorneys).

Justice ALBIN delivered the opinion of the Court.

The Affidavit of Merit statute, *N.J.S.A.* 2A:53A–26 to –29, requires a plaintiff in a malpractice action to serve on a defendant within 120 days of receipt of the answer an expert's sworn statement attesting that there exists a "reasonable probability" that the professional's conduct fell below acceptable standards. The Legislature enacted the statute with the laudatory purpose of weeding out frivolous lawsuits early in the process. The statute does not impose overly burdensome obligations. The plaintiff must keep an eye on the calendar and obtain and serve the expert's report within the statutory timeframe. This seemingly simple scheme has generated a tide of litigation and a new area of jurisprudence as this Court and our appellate courts have grappled with the derelictions of plaintiffs' counsel, who have filed well-grounded complaints, but have neglected to file technically correct or timely affidavits. The failure to deliver a proper affidavit within the statutory time period requires a dismissal of the

complaint with prejudice. *Alan J. Cornblatt, P.A. v. Barow,* 153 *N.J.* 218, 242, 708 *A.*2d 401, 413 (1998).

Beginning with *Cornblatt,* we have fashioned equitable remedies to mitigate the harshness of a rigid application of the statute that would result in the dismissal of an otherwise meritorious cause of action. In this case, plaintiff's attorney possessed an affidavit of merit ten days after the receipt of the answer well—within the time permitted by the statute to serve the affidavit on opposing counsel. The validity of the complaint is not at issue. Due to inadvertence, plaintiff's attorney served the affidavit eighteen days out-of-time, but before defendants moved to dismiss the complaint for failure to comply with the statutory deadline. We hold that this case is a suitable candidate for equitable relief.

This case brings to mind the adage that an ounce of prevention is worth a pound of cure. Therefore, going forward, we will require case management conferences in the early stage of malpractice actions to ensure compliance with the discovery process, including the Affidavit of Merit statute, and to remind the parties of the sanctions that will be imposed if they do not fulfill their obligations.

I.

Plaintiff Agostino Ferreira, represented by Mark Cuker, Esq., filed a medical malpractice complaint against defendants Dr. Bruce Wulfsberg and Rancocas Orthopedic Associates. The complaint alleged that defendants' negligent treatment of plaintiff for a fractured left heel caused an infection and the fracture not to heal properly. As a consequence, plaintiff suffered pain and economic hardship. The complaint, which detailed with specificity the acts of malpractice, alleged that defendants failed to use due care in (1) performing the surgery on plaintiff's left leg; (2) diagnosing the infection and bone fragments impinging on nerves; (3) removing bone fragments during surgery; (4) closing the wound; (5) prescribing antibiotics; (6) not consulting an appropriate infectious disease specialist; and (7) instructing the physical

148

therapists on post-operative care. Additionally, plaintiff's wife asserted a *per quod* claim for loss of consortium.

Several months before filing suit, Cuker retained Dr. Gregory B. Shankman, a board certified orthopedic surgeon, to review plaintiff's medical records and determine whether the care defendants and others rendered to plaintiff fell outside acceptable professional standards. In the pre-suit stage, Dr. Shankman advised Cuker by telephone that, in his opinion, there was a reasonable probability that only defendants were negligent in their care of plaintiff, thereby eliminating two other potential defendants from being named in the complaint. During this period, Cuker sent Dr. Shankman an affidavit of merit to review and sign.

On May 31, 2000, the complaint was filed. On August 17, 2000, defendants filed their answer, which asserted several affirmative defenses and demanded the production of a "medical expert affidavit." Cuker claims that the answer and the case information statement were misfiled in his office and not reviewed by him until January 2001. Within ten days of the filing of the answer, Cuker received Dr. Shankman's signed affidavit of merit, which, due to inadvertence, he failed to forward to defense counsel.

Discovery proceeded in the ordinary course. Plaintiff had 120 days after the filing of the answer in which to forward to defendants the affidavit of merit. During this 120–day period, defense counsel made no further request for the "medical expert affidavit" and did not participate in a telephonic case management conference. On January 3, 2001, eighteen days after the statutory deadline for delivering the affidavit of merit, Cuker had a telephone conversation with defense counsel, who brought to Cuker's attention that defendants had not received a medical affidavit. Within hours of that conversation, Cuker faxed Dr. Shankman's affidavit to defense counsel.

On January 17, 2001, defendants moved to dismiss the complaint with prejudice for failure to comply with the Affidavit of Merit statute. The trial court granted the motion to dismiss, and the Appellate Division affirmed in an unpublished decision. We

granted certification, 174 *N.J.* 193, 803 *A*.2d 1164 (2002), and now reverse.

## II.

■ The Affidavit of Merit statute provides:

In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

[*N.J.S.A.* 2A:53A–27.]

The statute was one of five bills passed as part of a 1995 tort reform package designed to " 'strike[ ] a fair balance between preserving a person's right to sue and controlling nuisance suits.' " *Palanque v. Lambert–Woolley*, 168 *N.J.* 398, 404, 774 *A*.2d 501, 505 (2001) (quoting Office of the Governor, *News Release* 1 (June 29, 1995)); *Cornblatt, supra*, 153 *N.J.* at 228, 708 *A*.2d at 405–06.[1] The statute imposes a set of procedural requirements in order for a plaintiff to maintain a professional malpractice action. *Cornblatt, supra*, 153 *N.J.* at 228–29, 708 *A*.2d at 405–06. First, the

---

[1] Justice Zazzali's concurring opinion suggests that the Affidavit of Merit statute is unconstitutional because it violates the separation of powers. That issue was not raised before this Court or below by the parties to this case. We do not consider Justice Zazzali's constitutional analysis because it would be unfair to the defendant who has never had the opportunity to address the issue. We note that in *Cornblatt* this Court rejected the notion that the Legislature lacked constitutional authority to enact the Affidavit of merit statute. *Cornblatt, supra*, 153 *N.J.* at 248, 708 *A*.2d at 415 ("[T]he constitutional principle of separation of powers in this context is not implicated. It is within the Legislature's authority to define a cause of action to include a limitations period within which the plaintiff must act.") (citation omitted). In the more than half-dozen cases in which this Court has grappled with the Affidavit of Merit statute since *Cornblatt*, no one has questioned, and this Court has never revisited, the statute's constitutionality.

plaintiff must show that the complaint is meritorious by obtaining an affidavit from an appropriate, licensed expert attesting to the "reasonable probability" of professional negligence. *N.J.S.A.* 2A:53A–27; *Palanque, supra,* 168 *N.J.* at 404, 774 *A.*2d at 505. Second, the affidavit must be provided to the defendant within sixty days of the filing of the answer or, for good cause shown, within an additional sixty-day period. *N.J.S.A.* 2A:53A–27; *Burns v. Belafsky,* 166 *N.J.* 466, 470–71, 766 *A.*2d 1095, 1097–98 (2001). Third, the plaintiff's failure to serve the affidavit within 120 days of the filing of the answer is considered tantamount to the failure to state a cause of action, subjecting the complaint to dismissal with prejudice. *N.J.S.A.* 2A:53A–29; *Palanque, supra,* 168 *N.J.* at 404, 774 *A.*2d at 505; *Cornblatt, supra,* 153 *N.J.* at 247, 708 *A.*2d at 415.

The statute also places certain burdens on the defendant to provide the documents necessary for the preparation of the affidavit by the plaintiff's expert. In the absence of compliance with a document request, the plaintiff may provide a sworn statement, in lieu of the affidavit, certifying that the necessary records were not made available. *N.J.S.A.* 2A:53A–28. The Legislature did not intend to give medical malpractice defendants the power to destroy a meritorious malpractice action by refusing to provide the very records the expert would need to prepare the affidavit. *Barreiro v. Morais,* 318 *N.J.Super.* 461, 470, 723 *A.*2d 1244, 1248 (App.Div.1999).

Our cases have repeatedly emphasized the dual purpose of the Affidavit of Merit statute: "to weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court." *Hubbard v. Reed,* 168 *N.J.* 387, 395, 774 *A.*2d 495, 500 (2001); *see Palanque, supra,* 168 *N.J.* at 404, 774 *A.*2d at 505 (stating that Legislature intended "to curtail frivolous litigation without preventing access to the courts for meritorious claims"); *Galik v. Clara Maass Medical Center,* 167 *N.J.* 341, 359, 771 *A.*2d 1141, 1152 (2000) ("there is no legislative interest in barring meritorious claims

brought in good faith"). The legislative purpose was not to "create a minefield of hyper-technicalities in order to doom innocent litigants possessing meritorious claims." *Mayfield v. Community Med. Assocs., P.A.,* 335 *N.J.Super.* 198, 209, 762 *A.*2d 237, 244 (App.Div.2000).

■ We have recognized—consistent with our understanding of its legislative intent—two equitable remedies that temper the draconian results of an inflexible application of the statute. A complaint will not be dismissed if the plaintiff can show that he has substantially complied with the statute. *Palanque, supra,* 168 *N.J.* at 405–06, 774 *A.*2d at 505–06; *Fink v. Thompson,* 167 *N.J.* 551, 561–65, 772 *A.*2d 386, 392–95 (2001); *Galik, supra,* 167 *N.J.* at 351–59, 771 *A.*2d at 1147–53; *Cornblatt, supra,* 153 *N.J.* at 239–42, 708 *A.*2d at 411–13. Moreover, a complaint will be dismissed without prejudice if there are extraordinary circumstances to explain noncompliance. *Palanque, supra,* 168 *N.J.* at 404–05, 774 *A.*2d at 505–06; *Cornblatt, supra,* 153 *N.J.* at 246–47, 708 *A.*2d at 414–15.

■ In *Cornblatt, supra,* we first applied the doctrine of substantial compliance in the context of the Affidavit of Merit statute. 153 *N.J.* at 239–42, 708 *A.*2d at 411–13. The doctrine is invoked so that technical defects will not defeat a valid claim. *Id.* at 239, 708 *A.*2d at 411; *see also Galik, supra,* 167 *N.J.* at 352, 771 *A.*2d at 1148 ("It is a doctrine based on justice and fairness, designed to avoid technical rejection of legitimate claims.") The doctrine requires the moving party to show: "(1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim; and (5) a reasonable explanation why there was not strict compliance with the statute." *Galik, supra,* 167 *N.J.* at 353, 347–48, 771 *A.*2d at 1149, 1144–46 (finding substantial compliance where plaintiff did not file affidavit within statutory time frame, but plaintiff's counsel, before initiating suit, provided defendants' insurance carriers with two detailed expert's reports that estab-

lished legitimacy of complaint and served as basis for settlement discussions); *Palanque, supra,* 168 *N.J.* at 405, 774 *A.*2d at 505–06 (finding substantial compliance doctrine not satisfied where plaintiff had expert's report in hand before filing suit, but failed to provide defendant with affidavit of merit or expert's report within 120 days after filing of answer); *Fink, supra,* 167 *N.J.* at 561–64, 772 *A.*2d at 392–94 (finding substantial compliance where timely-served affidavit and extensive expert's report clearly focused on conduct of defendant and his relationship to malpractice case, even though both documents failed to name defendant doctor); *Cornblatt, supra,* 153 *N.J.* at 239–242, 708 *A.*2d at 411–13 (finding substantial compliance where plaintiff served timely certification instead of affidavit). Although we have yet to define the full scope of extraordinary circumstances as an equitable remedy for failure to comply with the statute, we do know that attorney inadvertence is not such a circumstance entitling plaintiff to a remedy of dismissal of a complaint *without* prejudice. *Palanque, supra,* 168 *N.J.* at 405, 774 *A.*2d at 505–06.

In the present case, plaintiff's counsel was in possession of the affidavit of merit within ten days of the filing of the answer. Moreover, plaintiff's counsel had complied with the underlying legislative purpose by having an expert verify the meritorious nature of the malpractice claims at an early stage of the case. Defendants do not contend that they suffered prejudice by the eighteen-day late service of the affidavit. There was no delay in the proceedings or unnecessary expense incurred by defendants as a result of the affidavit's tardy arrival. Defendants did not request the affidavit at any point between the filing of the answer and the end of the 120–day statutory period. Significantly, it was not until after the receipt of the affidavit that defendants filed the motion to dismiss.

Although this case satisfies most of the factors necessary to establish substantial compliance with the statute, it nevertheless falls short of the mark. As in *Palanque, supra,* plaintiff's counsel did not, within the statutory time frame, take steps to forward the

affidavit to opposing counsel. 168 *N.J.* at 405–06, 774 *A.*2d at 505–06. Moreover, counsel's carelessness in misfiling defendant's answer and failing to calendar this matter does not constitute an extraordinary circumstance. *See id.* at 405, 774 A.2d at 505. That, however, does not end our equitable analysis.

This plaintiff possessed the affidavit of merit almost at the time the clock began to run and served the affidavit before defendants filed a motion to dismiss. In that respect, he stands apart from the plaintiffs in *Palanque; Fink,* and *Galik,* who did not serve affidavits that conformed to the statute until after defendants had filed motions to dismiss. Ordinarily, one would expect the defendant who claims to be prejudiced by the failure to receive discovery to file an appropriate motion based on its absence, not on the occasion of its receipt. We do not fault defendants for attempting to enforce the time requirements of the Affidavit of Merit statute to their advantage. However, principles of equity and the essential goal of the statute—to eliminate frivolous lawsuits—are not advanced by dismissing the complaint. Plaintiff's malpractice action was verified by an expert as meritorious within 120 days of the filing of defendants' answer and served on defendants *only* eighteen days later. Defendants waited until after they received the affidavit to file the dismissal motion. Under those circumstances, we conclude that defendants should be estopped from claiming entitlement to dismissal as a remedy.

We do not condone the misfiling of pleadings by plaintiff's counsel or his failure to use the simple expedient of a calendar as a guard against inadvertence. The Association of Trial Lawyers of America–New Jersey, as *amicus curiae,* has urged this Court to adopt a rule that would require, as a condition of the filing of a malpractice action, the contemporaneous attachment of an affidavit of merit to the complaint. That would appear to be a disheartening concession that not all plaintiffs' counsel can be expected to follow the time restrictions in the Affidavit of Merit statute. We cannot rewrite the statute, eliminating the time afforded to the

diligent attorneys who follow its mandate, to create a fail-safe system for the few neglectful attorneys who do not.

■ The Affidavit of Merit statute was intended to flush out insubstantial and meritless claims that have created a burden on innocent litigants and detracted from the many legitimate claims that require the resources of our civil justice system. The statute was not intended to encourage gamesmanship or a slavish adherence to form over substance. The statute was not intended to reward defendants who wait for a default before requesting that the plaintiff turn over the affidavit of merit.

■ The rule we announce in this case will further the fundamental purpose of the Affidavit of Merit statute. In a case where the plaintiff has in hand an affidavit within the 120–day statutory period and serves the affidavit on defense counsel outside that time frame but before defense counsel files a motion to dismiss, the defendant shall not be permitted to file such a motion based on the late arrival of the affidavit. If defense counsel files a motion to dismiss after the 120–day deadline and before plaintiff has forwarded the affidavit, the plaintiff should expect that the complaint will be dismissed with prejudice provided the doctrines of substantial compliance and extraordinary circumstances do not apply. That formulation places strong incentives on both plaintiffs' and defense counsel to act diligently.

## III.

To ensure that discovery related issues, such as compliance with the Affidavit of Merit statute, do not become sideshows to the primary purpose of the civil justice system—to shepherd legitimate claims expeditiously to trial—we propose that an accelerated case management conference be held within ninety days of the service of an answer in all malpractice actions. Our rules already provide for case management conferences in civil cases. *See R.* 4:5B–1; *R.* 4:5A–1 (exempting civil commitment). Expediting the schedule in malpractice cases will further the intent of our Best

Practice rules: to resolve potential discovery problems before they become grist for dueling motions. At the conference, the court will address all discovery issues, including whether an affidavit of merit has been served on defendant. If an affidavit has been served, defendant will be required to advise the court whether he has any objections to the adequacy of the affidavit. If there is any deficiency in the affidavit, plaintiff will have to the end of the 120-day time period to conform the affidavit to the statutory requirements. If no affidavit has been served, the court will remind the parties of their obligations under the statute and case law.

Our proposal does not restrict the flexibility of trial courts to convene additional case management conferences to facilitate the discovery process and motion practice. Our Best Practices rules contemplate that case management conferences should be held when "something can be gained from it." 2 *New Jersey Practice, Court Rules Annotated,* Comment on *R.* 4:5B–2 (John H. Klock) (5th ed. Supp. 2003–2004). The painful experience of our affidavit of merit jurisprudence reveals the compelling need for such conferences at an early stage before problems arise. Indeed, our proposal serves the very goal of case management; it will "assist discovery . . . [and] promote the orderly and expeditious progress of the case." *R.* 4:5B–2. We trust that early court intervention in the discovery process will permit the Affidavit of Merit statute to fulfill its true purpose—to bring a swift demise to frivolous lawsuits while allowing meritorious ones to have their day in court.

IV.

Diligence and attentiveness in the practice of law will spare plaintiffs' attorneys from later seeking an equitable remedy that may not be available. Those members of the plaintiffs' bar who follow the simple dictates of the statute will find no impediment to championing the causes of their clients.

The decision of the Appellate Division is reversed and the matter remanded for further proceedings.

Justice LONG, concurring in part and dissenting in part.

I have no quarrel with the court's ultimate disposition of this matter. Reinstatement of the complaint is the obviously correct outcome. My point of departure from my colleagues is a global one. I am no longer willing to pen or join in the reasoning of yet another opinion that limns excessively fine distinctions solely to avoid the injustice that necessarily flows from the holding of *Alan J. Cornblatt, P.A. v. Barow*, 153 *N.J.* 218, 708 *A.*2d 401 (1998), that all deviations from the Affidavit of Merit statute warrant dismissal with prejudice except for the narrowly prescribed category of "exceptional circumstances." I therefore write separately to express my view that it is time for *Cornblatt* to be modified.

When the Legislature enacted the Affidavit of Merit statute, *N.J.S.A.* 2A:53A–26 to –29, as a tort reform measure, it declared that that initiative was "designed to weed out frivolous lawsuits at an early stage and to allow meritorious cases to go forward." *Galik v. Clara Maass Med. Ctr.*, 167 *N.J.* 341, 350, 771 *A.*2d 1141, 1147 (2001) (citing *Cornblatt, supra*, 153 *N.J.* at 242, 708 *A.*2d at 413). Obviously underlying that scheme was the wholly unremarkable notion that, if a plaintiff in a malpractice case cannot obtain an expert's report regarding deviation, his or her claim should not stand. To relieve the system and individual litigants of the burdens of prosecuting and defending against such claims, the Legislature set forth within the statute a methodology for the filing of an affidavit of merit. *N.J.S.A.* 2A:53A–27. Plaintiff's failure to provide an affidavit pursuant to the act is "deemed a failure to state a cause of action." *N.J.S.A.* 2A:53A–29.

In *Cornblatt*, this Court held that deviation from the Affidavit of Merit statute should result in a dismissal with prejudice except in extraordinary circumstances. *Cornblatt, supra*, 153 *N.J.* at 247, 708 *A.*2d at 415 (citing *Hartsfield v. Fantini*, 149 *N.J.* 611, 618, 695 *A.*2d 259, 263 (1997)). In line with the legislative intent, *Cornblatt* was on firm legal ground in concluding that, if a plaintiff is unable to provide an affidavit of merit in a malpractice case, a fundamental element necessary to the ultimate rendering of a

judgment (the fact of deviation) is absent. Presumably, that is what led the Court to state that "[t]he violation giving rise to the dismissal goes to the heart of the cause of action as defined by the Legislature," *Cornblatt, supra*, 153 *N.J.* at 244, 708 *A.*2d at 414, and to conclude that dismissal with prejudice is the proper response. *Id.* at 245, 708 *A.*2d at 414 (citing *Printing Mart–Morristown v. Sharp Electronics Corp.*, 116 *N.J.* 739, 563 *A.*2d 31 (1989)).

However, experience over the past eight years has taught us that there are two distinct classes of cases arising under *N.J.S.A.* 2A:53A–27. The first is the class that infused *Cornblatt.* It makes perfect sense that, where a plaintiff is unable to provide an affidavit at all, the omission should be considered substantive, resulting in a merits-dismissal with prejudice.

The vastly more common category is entirely different. It does not involve the inability of a plaintiff to produce an affidavit regarding deviation, but arises out of procedural slip-ups in filing or service or out of curable technical deficiencies. Such defects do not "go to the heart of the cause of action." Indeed, because they do not reflect negatively on the merits of a plaintiff's malpractice claim, dismissing the complaint does nothing to advance the legislative goal of ridding the system of frivolous cases. On the contrary, it thwarts the stated aim of allowing meritorious cases to go forward. That was never the intention of the Legislature when it enacted the Affidavit of Merit statute.

Accordingly, *Cornblatt's* mandatory dismissal with prejudice rule should be limited to those cases in which a plaintiff cannot or will not produce an affidavit of merit at all. Con-comitantly, trial judges should have available to them a full panoply of discretionary remedies for procedural deficiencies in complying with the Affidavit of Merit statute, including dismissal with or without prejudice and discovery-type sanctions such as reasonable expenses incurred in obtaining the affidavit along with counsel fees. *See R.* 4:23–1 *et. seq.* In each case, the trial judge should assess the facts, including the willfulness of the violation, the proximity of

trial and any prejudice that would accrue to the party aggrieved by the filing deviation, and apply the appropriate remedy. The availability of sanctions short of dismissal with prejudice would align the Affidavit of Merit procedure with *R.* 4:37–2(a) for the first time since the statute was enacted. Moreover, it would provide judges with a response that is proportionate to most procedural violations and also would serve to save for trial the meritorious cases of injured victims of malpractice. Nothing in the statute itself precludes such an approach. It is only *Cornblatt* that stands in the way.

Modifying *Cornblatt* will not offend notions of *stare decisis.* Certain expectations about Affidavit of Merit litigation, particularly that it would spring from cases in which plaintiffs could not support their claims of deviation, obviously underpinned *Cornblatt* and directed its result. Those expectations have not materialized. In fact, the heartland of Affidavit of Merit cases involves nothing more than procedural mistakes that are entirely irrelevant to the legitimacy of the cause of action. That reality not only justifies but requires a modification of *Cornblatt.*

*Stare decisis* operates to control change, not to prevent it. *Fox v. Snow,* 6 *N.J.* 12, 23, 76 *A.*2d 877, 883 (1950) (Vanderbilt, J., dissenting). Indeed, as Justice Vanderbilt observed in *Fox,* that doctrine does not require us "to adhere blindly to rules that have lost their reason for being." *Ibid.* The broad mandatory dismissal with prejudice language of *Cornblatt* falls into that category. Until it is modified, we will be required to continue on our course of painstakingly deconstructing the facts in every single Affidavit of Merit case in order to find some basis on which to escape *Cornblatt* and achieve a just result. *Stare decisis* does not require that of us.

One final note. The preventive case management scheme the majority has put into place essentially carves a class of cases out of the template for case management set forth in *R.* 4:5. That rule was enacted as part of the Best Practices initiative and fundamentally altered the way cases are managed in order to

render our system more effective and efficient. Under the majority's opinion, not only is the judicial discretion and flexibility that is a hallmark of *R.* 4:5 altered, but the very notion that a case-management conference is "not automatic" becomes a nullity. Given the ameliorative goals of the Best Practices revisions, that kind of piecemeal amendment of the new rules seems counter-productive at best. More importantly, I deem it unlikely that the court's innovation will forestall a new round of litigation. Rather, I see it as simply moving the field of battle to a different location. For those reasons, although I concur in the result, I cannot agree with the Court's rationale.

Justice ZAZZALI and Judge PRESSLER (temporarily assigned) join in this opinion.

Justice ZAZZALI, concurring in part and dissenting in part.

The majority and concurring opinions represent positive efforts to address an intractable problem. I agree with the result reached by Justice Albin on behalf of the majority, a result that will salvage yet another meritorious claim from dismissal under the Affidavit of Merit statute. Although I concur in the majority's granting of relief to plaintiff, as to future cases I prefer the approach taken by Justice Long in her concurring opinion.

I recognize that the Affidavit of Merit statute has important objectives, but I write separately to express my reservations about its constitutionality. Because the parties have not briefed nor argued the issue, it would be inappropriate to speak conclusively on the subject. Nonetheless, the question, which is a profound one, remains unresolved. I offer these observations.

In *Alan J. Cornblatt, P.A. v. Barow,* 153 *N.J.* 218, 248, 708 *A.*2d 401, 415–16 (1998), this Court discussed, but did not decide, whether the Affidavit of Merit statute impermissibly invades our exclusive power to regulate practice and procedure. In dicta, we suggested that the statute does not violate the doctrine of separation of powers. *Ibid.* Underlying that suggestion were two observations. First, we stated that "[i]t is within the Legislature's

authority to define a cause of action to include a limitations period within which the plaintiff must act." *Ibid.* (citing *E.A. Williams Inc. v. Russo Dev. Corp.*, 82 *N.J.* 160, 164–67, 411 *A.*2d 697, 699–700 (1980)). Second, we found that the Legislature's decision to require an affidavit of merit neither conflicted with our rules applying to malpractice suits nor interfered with the judiciary's role in resolving such disputes. *Ibid.* Notwithstanding that dicta, we noted that the constitutional issue did not "generate significant ... public concern," and, therefore, we found "it unnecessary and inappropriate to deal conclusively" with the question given that it had not been raised properly below. *Ibid.*

Five years later, and after extensive litigation over strict application of the statute, one fairly can say that the affidavit-of-merit requirement has engendered significant concerns that call for a more thorough exploration of the statute's constitutionality. Indeed, numerous courts have struggled with the statute when its application would bar an apparently meritorious claim. *See, e.g., Burns v. Belafsky*, 166 *N.J.* 466, 478, 766 *A.*2d 1095, 1101 (2001) (reasoning that because statute was not intended to bar meritorious claims, lawyer's inadvertent failure to file timely affidavit of merit did not preclude plaintiff from establishing good cause for sixty-day extension); *Mayfield v. Cmty. Med. Assocs.*, 335 *N.J.Super.* 198, 209, 762 *A.*2d 237, 244 (App.Div.2000) (finding, under circumstances, that "it would be wholly counter to the remedial purpose of the statute to dismiss [an] apparently meritorious action based on what would be no more than a merely mechanical application of the dry statutory words").

Whether the struggle encountered by our courts demonstrates that the Legislature has impinged on powers reserved to the judiciary remains an open question. Because the parties have not raised the matter, the well-intentioned majority opinion does not address it. Confined by our decision in *Cornblatt*, the majority attempts to reduce litigation over the statute by mandating a case-management conference, a measure that I hope will succeed on a practical level. However, I agree with Justice Long that the case-

management requirement may become another source of litigation as parties dispute compliance with the mandate. In any event, we must begin to address the more fundamental question whether the statute unconstitutionally usurps judicial power.

### I.

Article VI, section 2, paragraph 3 of the New Jersey Constitution provides that "the Supreme Court shall make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts." In *Winberry v. Salisbury*, 5 *N.J.* 240, 247, 255, 74 *A*.2d 406, 410, 414 *cert. denied*, 340 *U.S.* 877, 71 *S.Ct.* 123, 95 *L.Ed.* 638 (1950), this Court interpreted that provision as providing the judicial branch with exclusive authority over court administration, including court practice and procedure. In reaching that determination, we observed that "[r]ules of the court are made by experts who are familiar with specific problems to be solved and the various ways of solving them." *Id.* at 253, 74 *A*.2d at 413. Underlying our holding in *Winberry* was the doctrine of separation of powers and its recognition that each branch of government is suited to make certain types of decisions and should "exercise fully its own powers without transgressing upon the powers rightfully belonging to a cognate branch." *Knight v. City of Margate*, 86 *N.J.* 374, 388, 431 *A*.2d 833, 840 (1981).

*Winberry* and its progeny instruct that whether a legislative enactment impermissibly overrides a court rule depends on the character of the enactment. If the statute in question involves procedural as opposed to substantive rights, the court rule generally prevails. *See, e.g., Winberry, supra,* 5 *N.J.* at 255, 74 *A*.2d at 414 (concluding that court rules requiring appeal from final judgment within forty-five days prevailed over statute authorizing appeal within one year after judgment); *Borough of New Shrewsbury v. Block 115, Lot 4,* 74 *N.J.Super.* 1, 8, 180 *A*.2d 387, 391 (App.Div.1962) (holding that court rule, not statute, controls motions to reopen judgment under law governing tax foreclosures);

*In re J.M.*, 273 *N.J.Super.* 593, 599–600, 642 *A.*2d 1062, 1065–66 (Ch.Div.1994) (finding that court rule mandating credit for time served must yield to statute authorizing denial of credit because statute addressed extent of punishment imposed for crime, a matter of substantive law for Legislature); *cf. McKeown–Brand v. Trump Castle Hotel & Casino*, 132 *N.J.* 546, 557–58, 626 *A.*2d 425, 430–31 (1993) (construing statute that permitted award of attorney fees against nonprevailing party for frivolous litigation as applying only to parties and not attorneys to avoid declaring statute unconstitutional under *Winberry*).

In *Winberry*, we distinguished between substantive and procedural laws by their primary effects on the parties. Substantive law defines the parties' rights and duties, whereas procedural law regulates the means through which those rights and duties are enforced. *Winberry, supra*, 5 *N.J.* at 247–48, 74 *A.*2d at 410. In other words, "[i]f it is but one step in the ladder to final determination and can effectively aid a court function, it is procedural in nature and within the Supreme Court's power of rule promulgation." *Suchit v. Baxt*, 176 *N.J.Super.* 407, 427, 423 *A.*2d 670, 680 (Law Div.1980).

Although *Winberry* expressed the substantive/procedural divide in rather clear terms, that distinction has been difficult to apply because statutes and rules can have both procedural and substantive implications. *Knight, supra*, 86 *N.J.* at 388–89, 431 *A.*2d at 840–41. "It occasionally happens that an underlying matter defies exact placement or neat categorization." *Ibid.* Adding to the complexity of the task is the fact that the separation between the legislative and judicial branches has " 'never been watertight.' " *Id.* at 388, 431 *A.*2d at 840 (quoting *In re Salaries for Prob. Officers*, 58 *N.J.* 422, 425, 278 *A.*2d 417, 418 (1971)). Indeed, our precedent makes clear that, in the spirit of comity, we at times have shared authority over administration of the judicial system with the Legislature. *See, e.g., id.* at 391, 431 *A.*2d at 842 (upholding statute prohibiting judicial employees from casino employment). In doing so, we have observed that "the doctrine of

separation of powers was never intended to create, and certainly never did create, utterly exclusive spheres of competence." *In re Salaries for Prob. Officers, supra*, 58 *N.J.* at 425, 278 *A.*2d at 418.

Thus, our jurisprudence since *Winberry* demonstrates that the procedural characteristics of a legislative enactment do not necessarily determine the enactment's fate. *Knight, supra*, 86 *N.J.* at 389, 431 *A.*2d at 841 (recognizing that our post-*Winberry* decisions "have made clear that [although] the judicial power is paramount and exclusive, it need not in every context or application be preclusive"). Rather, judicial toleration of legislative intrusion has pivoted on a two-prong analysis. Initially, we have considered whether the judiciary has fully exercised its power with respect to the matter at issue. *Id.* at 389–90, 431 *A.*2d at 841. In the absence of complete judicial action, we then have inquired into whether the statute serves a legitimate legislative goal, and, "concomitantly, does not interfere with judicial prerogatives or only indirectly or incidentally touches upon the judicial domain." *Id.* at 391, 431 *A.*2d at 842; *cf. Suchit, supra*, 176 *N.J.Super.* at 427, 423 *A.*2d at 680 (finding court rule establishing medical malpractice panel was procedural device in view of its incidental effect on substantive rights and express purpose—*i.e.*, "expediting the disposition of cases"). In other words, we have accommodated legislative enactments touching on integral areas of the judicial system only when those enactments "have not *in any way interfered* with this Court's constitutional obligation" to "insure a proper administration of the court system." *Passaic Cty. Prob. Officers' Ass'n v. County of Passaic*, 73 *N.J.* 247, 255, 374 *A.*2d 449, 453 (1977) (emphasis added); *see also Knight, supra*, 86 *N.J.* at 391, 431 *A.*2d at 842 (upholding statutory prohibition on employment of members of judiciary by casino licensees based on finding that statute dealt with important legislative concern and did not conflict with Court's exercise of judicial powers).

## II.

In the context of this case, the relevant question, and my concern, is whether the statute, which not only declares an affida-

vit of merit to be an element of a professional malpractice cause of action but also requires it to be filed and served within a specific and strict period of time, impinges upon this Court's constitutional power to regulate practice and procedure.[2]

I do not believe the Affidavit of Merit statute is akin to a statute of limitations, which would be within the Legislature's province. Rather, in my view, the mandatory time constraints at the heart of the statute are clearly procedural and were recognized as such by the Legislature itself, which described the statute as establishing "new procedures." Assembly Insurance Committee, *Statement to Senate Bill No. S–1493*, at 1 (June 1, 1995); Senate Commerce Committee, *Statement to Senate Bill No. S–1493*, at 1 (Nov. 10, 1994).

As we observed in *Cornblatt, supra,* 153 *N.J.* at 238, 708 *A.*2d at 411, "the provision for filing an affidavit of merit imposes a pleading requirement." Pleading requirements fall clearly within this Court's rule-making prerogatives. *See generally R.* 4:5 to 4:9. However, our court rules may be regarded as not specifically addressing affidavits of merit despite *Rule* 4:5–1's interdiction of any pleadings other than those enumerated therein. It is thus debatable whether this Court has fully occupied the "pleading" field precluding legislative action. If we assume that legislative action is not entirely prohibited, either because the statute blends substance and procedure or because the Court has not fully occupied the field, we then would have to determine whether the

---

[2] It is noteworthy that an editorial published in the *New Jersey Law Journal* after the enactment of the Affidavit of Merit statute characterized the affidavit requirement as "an unmistakable legislative attempt to control practice and procedure in a lawsuit already before the court." *A Litigator's Predicament,* 142 *N.J.L.J.* 24 (Dec. 11, 1995). Observing that " '[p]redicament' is defined as a troublesome, embarrassing or ludicrous situation," the editorial concluded that all three adjectives appropriately described the legislatively mandated affidavit of merit. *Ibid.* The editorial expressed hope that the "dangerous" legislation would "attract [our] attention soon" and that when it did, we would "seize upon the *Winberry* violation as a means to rid [malpractice litigators] of this entire unfortunate enactment." *Ibid.*

legislative action meets the second prong of the *Knight* analysis. That requires balancing the legitimacy of the governmental purpose with the extent of the statute's burden on the exercise of our judicial authority over court practice and procedure.

As we have said on numerous occasions, the Legislature enacted the Affidavit of Merit statute to "weed out frivolous lawsuits at an early stage and to allow meritorious cases to go forward" by requiring plaintiffs to make a threshold showing of the merits of their claim during the pleading stage. *E.g., Galik v. Clara Maass Med. Ctr.,* 167 *N.J.* 341, 350, 771 *A.*2d 1141, 1147 (2001). Reducing the number of frivolous claims is a commendable governmental purpose that is closely linked to the efficient administration of justice.

Notwithstanding the legitimacy of the legislative objective, it may be difficult to reconcile the strict pleading requirements contained in the statute with our flexible approach to pleading, a keystone of our procedural jurisprudence that is reflected in both our court rules and case law.[3] That irreconcilability may result in

---

[3] *Rule* 4:5–7 provides that "[e]ach allegation of a pleading shall be simple, concise and direct, and *no technical forms of pleading are required.* All pleadings shall be liberally construed in the interest of justice." (Emphasis added). Our general reluctance to dismiss complaints for failure to state a claim pursuant to *Rule* 4:6–2(e) further evinces our liberal approach to pleadings. *See Printing Mart–Morristown v. Sharp Elecs. Corp.,* 116 *N.J.* 739, 772, 563 *A.*2d 31 (1989) (requiring courts to accord a "meticulous and indulgent examination" to complaint when determining whether to dismiss for failure to state claim); Pressler, *Current N.J. Court Rules,* comment 4.1 on *R.* 4:6–2 (2004) (instructing that "if a cause of action can be gleaned from even an obscure statement," a claim should not be dismissed). Read together, the rules on pleadings reflect our overall goal of accomplishing "substantial justice on the merits" by not closing the courtroom doors to a party whose only failure is a procedural or technical mistake that causes no prejudice to other litigants. *See Melone v. Jersey Cent. Power & Light Co.,* 18 *N.J.* 163, 174, 113 *A.*2d 13, 19 (1955) (emphasizing that the "aim of [our court] rules is substantial justice"); *Handelman v. Handelman,* 17 *N.J.* 1, 11, 109 *A.*2d 797, 802 (1954) (describing general purpose of rules as an effort to "broaden the procedural powers of our courts to the end that just dispositions on the merits may be facilitated and determinations on the basis of procedural niceties may be avoided").

an untenable burden on the exercise of our judicial authority over practice and procedure.

For example, as we interpreted the statute in *Cornblatt*, failure to comply with the strict temporal requirements of the statute requires dismissal with prejudice except in extraordinary circumstances. That result is contrary to our rules of practice and their spirit in several respects. It is incompatible with our aversion to dismissing complaints for failure to state a claim pursuant to *Rule* 4:6–2(e). It conflicts with *Rule* 4:37–2(a), which provides that dismissal for failure to comply with a procedural rule is presumptively without prejudice. And, it is inconsistent with our liberal approach to amendments to pleadings pursuant to *Rule* 4:9–1. *See* Pressler, Current N.J. Court Rules, supra, comment on R. 4:9–1 (explaining that "[t]he motion for leave to amend is required by the rule to be liberally granted and without consideration of the ultimate merits of the amendment").

Moreover, dismissing a claim for failure to comply with a procedural hurdle disserves both the legislative goal of preserving meritorious malpractice actions and the broader *raison d' etre* of our court rules—achieving substantial justice on the merits. As Justice Long notes in her concurrence, "procedural slip-ups in filing or service ... 'do not go to the heart of' " a professional malpractice claim. Op. at 157, 836 *A*.2d at 786. Instead, those slip-ups should properly be regarded as curable deficiencies in pleadings that are traditionally left to a court's discretion under our court rules.

Finally, there is an apparent conflict between the affidavit-of-merit requirement and the express instruction of Rule 4:5–7 that "no technical forms of pleading are required." Pleadings are "formal allegations by the parties ... of their respective claims and defenses, with the intended purpose being to provide notice of what is to be expected at trial." *Black's Law Dictionary* 1152 (6th ed. 1990). By requiring plaintiffs to provide an affidavit demonstrating the strength of their negligence claim in order to "state a claim" for professional malpractice, the statute appears to

impose a technical pleading requirement. As a result, courts adhering to the Affidavit of Merit statute, in turn, may violate the provisions of *Rule* 4:5–7.

In sum, the conflicts between our rules and the Affidavit of Merit statute, coupled with the fine distinctions that we have drawn to avoid the injustice that flows from the statute's strict application, suggest a possible constitutional infirmity.

### III.

We would not be alone in concluding that an affidavit-of-merit statute is an improper legislative incursion into the judicial domain. In *Hiatt v. Southern Health Facilities, Inc.*, 68 *Ohio St.*3d 236, 626 *N.E.*2d 71, 72 (1994), the Supreme Court of Ohio reached a similar conclusion. The Ohio Constitution, like ours, vests exclusive power over practice and procedure with the judiciary. *Id.* at 72 n. 1. In *Hiatt*, the Supreme Court of Ohio considered a statute that required a plaintiff in a malpractice action to attach to the complaint an affidavit, in which either the plaintiff or his or her attorney verified that the plaintiff had attempted to obtain medical records. *Id.* at 73. The court found that the statutory requirement conflicted with a court rule that expressly provided that pleadings did not have to be verified or accompanied by an affidavit. *Ibid.* Citing to the constitutional provision vesting Ohio's judiciary with exclusive power over practice and procedure, the court held that the court rule prevailed, rendering the statute invalid. *Ibid.* Thus, at least one other court has concluded that an affidavit-of-merit statute raises separation-of-powers concerns.

### IV.

Fifty years ago we warned that "[i]t would ... defeat the desired objectives of simplicity and flexibility in procedure, if statutory procedures might be grafted on the rules of the court." *State v. Otis Elevator Co.*, 12 *N.J.* 1, 17, 95 *A.*2d 715, 723 (1953). Experience has affirmed the *Otis* fears: conditions have become more complex and less flexible. If the Legislature simply had

required that plaintiffs file an affidavit of merit early in the process "subject to the Rules of the Supreme Court," there would be less conflict with our procedural rules. Our Legislature wisely has followed that course in a number of contexts. *See, e.g., N.J.S.A.* 2A:34–9 (providing that jurisdiction in nullity-of-marriage proceedings may be acquired when "[p]rocess is served upon the defendant as prescribed by the rules of the supreme court [sic]"); *N.J.S.A.* 27:23–34.3(d) (providing that service of complaints and summonses charging violation of toll-collection monitoring system "may be made by means provided by the Rules Governing the Courts of the State of New Jersey"); *N.J.S.A.* 39:6A–28 (providing that "[c]ompensation for arbitrators [under the New Jersey Reparation Reform Act] shall be set by the Rules of the Supreme Court of New Jersey"). Those statutes demonstrate that a revised Affidavit of Merit statute and our constitutionally prescribed rule-making power can co-exist in a similar manner.

The Affidavit of Merit statute has important and laudable goals and should not be disregarded without due consideration. Were we to conclude that the statute is constitutionally suspect, it may be subject to judicial surgery. We have engaged in surgery to excise constitutional defects while preserving legislative intent. *Hamilton Amusement Ctr. v. Verniero,* 156 *N.J.* 254, 280, 716 *A.*2d 1137, 1149–50 (1998), *cert. denied,* 527 *U.S.* 1021, 119 *S.Ct.* 2365, 144 *L.Ed.*2d 770 (1999). In this instance, however, it may be more prudent for the Legislature to take corrective action, following the examples set forth in the prior paragraph. Such action would obviate the constitutional concerns that I have expressed.

## V.

In the eight years following the enactment of the Affidavit of Merit statute, we have interpreted and applied the statute on numerous occasions. During those years, we have not addressed comprehensively the statute's constitutionality. In the meantime, the public, the parties, and the courts have dealt with a torrent of litigation that unduly has burdened litigants as well as our trial

and appellate courts. We could not have forecasted that flood five years ago when, in *Cornblatt*, we found "it unnecessary and inappropriate to deal conclusively with the issue[ ]." *Cornblatt, supra,* 153 *N.J.* at 248, 708 *A.2d* 401. And, what is past being prologue, the burden on our courts may worsen. It is never too late to address a constitutional problem. As we have noted in other contexts, "[w]isdom too often never comes, and so one ought not to reject it merely because it comes late." *Immer v. Risko,* 56 *N.J.* 482, 495, 267 *A.2d* 481, 488 (1970) (quoting *Henslee v. Union Planters Nat'l Bank,* 335 *U.S.* 595, 600, 69 *S.Ct.* 290, 293, 93 *L.Ed.* 259, 264 (1949) (Frankfurter, J., dissenting)).

Judge PRESSLER (temporarily assigned) joins in this opinion.

*For reversing and remanding*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE, and Judge PRESSLER (temporarily assigned)—7.

*Concur in part/dissent in part*—Justices LONG, ZAZZALI and Judge PRESSLER (temporarily assigned).