SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Earneka Wiggins v. Hackensack Meridian Health** (A-43-23) (089441)

**Argued November 4, 2024 -- Decided January 22, 2025**

**FASCIALE, J., writing for a unanimous Court.**

In this medical malpractice appeal, the legal question is whether plaintiffs' service of an affidavit of merit (AOM) from a board-certified internal medicine doctor is sufficient to overcome a motion to dismiss when defendants' Rule 4:5-3 Specialty Statement states that "[a]t all relevant times, these defendants practiced the medical specialties of Internal Medicine and Gastroenterology and their treatment of [the patient] involved the medical specialties of Internal Medicine and Gastroenterology."

Plaintiffs, the administrators of the Estate of April Carden, filed a medical malpractice complaint against defendants Hackensack Meridian Health d/b/a JFK University Medical Center (JFK), Alok Goyal, M.D., and South Plainfield Primary Care (SPPC) (collectively, defendants). As relevant here, plaintiffs allege that Carden's death was directly attributable to Allopurinol prescribed by Dr. Goyal, that Dr. Goyal's negligence caused Carden's death, and that JFK and SPPC were vicariously liable because Dr. Goyal was an "agent, servant, or employee" of both.

Dr. Goyal and SPPC filed their answer and included the following Rule 4:5-3 Specialty Statement: "At all relevant times, these defendants practiced the medical specialties of Internal Medicine and Gastroenterology and their treatment of [Carden] involved the medical specialties of Internal Medicine and Gastroenterology." Plaintiffs provided each defendant with an AOM from Dr. Stella Jones Fitzgibbons, who is board certified by the American Board of Internal Medicine. Defendants stated that Dr. Fitzgibbons was unqualified to execute an AOM as to them. Dr. Goyal amplified his Specialty Statement, noting that "[a]ll treatment that I rendered to [Carden] was provided as both an internist and as a gastroenterologist." Defendants then moved to dismiss the complaint for failure to comply with the AOM statute. Plaintiffs argued that internists prescribe Allopurinol, not gastroenterologists. Alternatively, plaintiffs argued that, given defendants' Specialty Statement, an AOM from an internist is sufficient.

1

The trial judge denied the motions to dismiss the complaint. He found "that the 'care and treatment at issue' was the prescribing of Allopurinol, and the 'care or treatment at issue involves internal [medicine].'" (citing N.J.S.A. 2A:53A-41). Relying on Buck v. Henry, 207 N.J. 377 (2011), the trial judge concluded alternatively that plaintiffs complied with the AOM statute by submitting the AOM from Dr. Fitzgibbons, who is board certified in internal medicine. The judge later denied defendants' motion for reconsideration.

The Appellate Division granted defendants' motion for leave to appeal from the orders denying their motions to dismiss and for reconsideration and reversed those orders, concluding that plaintiffs were required to "serve an AOM from a physician board certified in each of [Dr. Goyal's] specialties" and that the language from Buck on which the trial court relied was dicta. 478 N.J. Super. 355, 358, 373 (App. Div. 2024). The Court granted leave to appeal. 258 N.J. 164 (2024).

**HELD:** When a defending physician practices in more than one specialty and the treatment involved falls within any of that physician's specialty areas, then an AOM from a physician specializing in one of those specialties is sufficient.

1. Under N.J.S.A. 2A:53A-27, a medical malpractice plaintiff must show that the complaint is meritorious by obtaining an affidavit from "an appropriate licensed person" attesting to the "reasonable probability" of professional negligence. The dual purposes of the AOM statute are to weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court. The Legislature enacted the Patients First Act in 2004, which supplemented the AOM statute by including additional requirements for a plaintiff's AOM in a medical malpractice case. The basic idea behind N.J.S.A. 2A:53A-41 is that the individual who executes the AOM in a medical malpractice case "be equivalently-qualified to the defendant physician." Buck, 207 N.J. at 389. Thus, N.J.S.A. 2A:53A-41 adds to the AOM statute the "equivalently qualified" requirement -- known as the "kind-for-kind" rule -- for an AOM in a medical malpractice case, and it recognizes three categories of credentialed physicians for purposes of that requirement. As relevant here, for those physicians who are specialists in a field recognized by the American Board of Medical Specialties and who are board certified in that specialty, the challenging expert must either be credentialed by a hospital to treat the condition at issue or be board certified in the same specialty in the year preceding the occurrence that is the basis for the claim or action. N.J.S.A. 2A:53A-41(a)(1) to (2). (pp. 14-18)

2. In Buck, the defending physician, alleged by the plaintiff to have negligently prescribed a sleep medication, was board certified in emergency medicine and was practicing as a family-medicine specialist at the time he treated the plaintiff. 207 N.J. at 382-83. The plaintiff provided an AOM from a specialist in emergency

2

medicine and an AOM from a psychiatrist, but nothing from a family medicine practitioner. Id. at 382. The trial judge found that the treatment did not involve emergency medicine and that the psychiatrist's AOM was insufficient. Id. at 387. The Appellate Division affirmed. Id. at 383. The Court remanded the matter to the trial judge to conduct a Ferreira "conference and decide anew the adequacy of [the] plaintiff's [AOMs]." Id. at 393, 395. The Court provided guidance -- which was not dicta -- germane to when a defending physician practices in more than one specialty and when the treatment involved may fall within those specialty areas. Id. at 387, 391, 393-96. First, the Court stated that "[a] physician may practice in more than one specialty, and the treatment involved may fall within that physician's multiple specialty areas. In that case, an [AOM] from a physician specializing in either area will suffice." Id. at 391. Second, the Court directed that a defending physician "include in his answer the field of medicine in which he specialized, if any, and whether his treatment of the plaintiff involved that specialty." Id. at 396. In light of that direction, now mandated by Rule 4:5-3, there is generally no need for a Ferreira judge or motion judge to make findings of fact about a physician's specialty and whether treatment of the plaintiff involved that specialty because the defending physician's Specialty Statement generally resolves those questions. (pp. 18-21)

3. Here, it is undisputed that Dr. Goyal is board certified in the specialty of internal medicine and in the subspecialty of gastroenterology. The plain language of N.J.S.A. 2A:53A-41 does not require an AOM to be from an individual with the same numerous specialties as the defending physician; instead, it requires only the same "specialty or subspecialty" in the singular. And Dr. Goyal's "care or treatment at issue" involves his "specialty or subspecialty" of internal medicine and gastroenterology, as stated in his Specialty Statement. Thus, as to the threshold issue of whether plaintiffs' AOM is sufficient to survive a motion to dismiss, Dr. Goyal's Specialty Statement and his later certification verify that his treatment of Carden involved his medical specialties of internal medicine and gastroenterology. Under Buck, when "the treatment involved may fall within [a] physician's multiple specialty areas" -- as is the case here -- "an [AOM] from a physician specializing in either area will suffice." 207 N.J. at 391. Dr. Fitzgibbons' AOM complies with the AOM statute, N.J.S.A. 2A:53A-41(a)(2)(a), and Buck, neither of which require an AOM from an individual matching all areas of practice if a defending physician practices in multiple specialty areas. Accordingly, the trial judge correctly denied defendants' motions. Plaintiffs must still demonstrate Dr. Goyal's professional negligence at trial. The Court reviews relevant standards. (pp. 21-28)

**REVERSED and REMANDED for further proceedings.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, NORIEGA, and HOFFMAN join in JUSTICE FASCIALE's opinion.**

3

Earneka Wiggins and Lynda Myers,
as administratrixes of the estate of
April Carden, deceased,

Plaintiffs-Appellants,

v.

Hackensack Meridian Health, d/b/a
JFK University Medical Center,

Defendant-Respondent,

and

Alok Goyal, M.D., and South
Plainfield Primary Care,

Defendants-Respondents.

On appeal from the Superior Court,
Appellate Division, whose opinion is reported at
478 N.J. Super. 355 (App. Div. 2024).

| Argued | Decided |
|--------|---------|
| November 4, 2024 | January 22, 2025 |

Roshan D. Shah argued the cause for appellants Earneka
Wiggins and Lynda Myers (Shah Law Group, and Lopez
McHugh, attorneys; Roshan D. Shah and Michael S.
Katz, on the brief).

1

Richard J. Tamn argued the cause for respondents Alok Goyal, M.D., and South Plainfield Primary Care (Krompier & Tamn, attorneys; Richard J. Tamn, of counsel and on the brief, and Jason M. Altschul, on the brief).

Katelyn E. Cutinello argued the cause for respondent Hackensack Meridian Health d/b/a JFK University Medical Center (Cocca & Cutinello, attorneys; Katelyn E. Cutinello and Anthony Cocca, of counsel and on the briefs).

Christina Vassiliou Harvey argued the cause for amicus curiae New Jersey Association for Justice (Lomurro Munson, attorneys; Christina Vassiliou Harvey and Jonathan H. Lomurro, of counsel and on the brief).

JUSTICE FASCIALE delivered the opinion of the Court.

In this medical malpractice appeal, the legal question is whether plaintiffs' service of an affidavit of merit (AOM) from a board-certified internal medicine doctor is sufficient to overcome a motion to dismiss when defendants' Rule 4:5-3 Specialty Statement states that "[a]t all relevant times, these defendants practiced the medical specialties of Internal Medicine and Gastroenterology and their treatment of [the patient] involved the medical specialties of Internal Medicine and Gastroenterology."

Applying N.J.S.A. 2A:53A-26 to -29 (AOM statute), the New Jersey Medical Care Access and Responsibility and Patients First Act (Patients First Act), N.J.S.A. 2A:53A-37 to -42, and Buck v. Henry, 207 N.J. 377 (2011), we hold that

2

when a defending physician practices in more than one specialty and the treatment involved falls within any of that physician's specialty areas, then an AOM from a physician specializing in one of those specialties is sufficient under the statutes.

Plaintiffs submitted an AOM from a board-certified internist. The defending physician is also a board-certified internist whose treatment "involved the medical specialties of Internal Medicine and Gastroenterology," according to the Specialty Statement. Service of the AOM from the board-certified internist should have defeated defendants' dismissal motions. Consistent with the purposes of the AOM statute, defeating such motions ensures that plaintiffs with meritorious claims will have their day in court. Although plaintiffs here have overcome dismissal at this early stage, they are still left to their trial proofs.

We therefore reverse the Appellate Division's judgment and uphold the orders denying defendants' motions to dismiss the complaint and motions for reconsideration.

I.

Earneka Wiggins and Lynda Myers (plaintiffs), in their capacity as administrators of the Estate of April Carden, filed a medical malpractice complaint in Essex County and named as defendants Hackensack Meridian

3

Health d/b/a JFK University Medical Center (JFK), Alok Goyal, M.D., and South Plainfield Primary Care (SPPC) (collectively, defendants).

Specifically, plaintiffs alleged that in 2016, Carden experienced a severe allergic reaction to "Tramadol and/or Allopurinol" and received a subsequent diagnosis of Stevens-Johnson Syndrome (SJS).[1] Dr. Goyal prescribed the Tramadol, and another doctor prescribed the Allopurinol. Carden then received medical treatment at JFK for her reaction to those drugs.

In 2020, Carden fell and was taken to JFK. Although JFK records noted an allergy to Tramadol, the "Emergency Department notes and subsequent consult reports indicated that Carden had no known allergies." Doctors diagnosed Carden with a blood clot and then discharged her from JFK. The next day, Dr. Goyal prescribed Allopurinol for Carden, which plaintiffs alleged again caused SJS and required readmission to JFK. She remained at JFK for about ten days. After being transferred to a burn center, Carden passed away from "cardiopulmonary arrest due to multiple organ failure, bacteremia, and [SJS]."

---

[1] Stevens-Johnson Syndrome is a disorder most often caused by an adverse drug reaction; it "causes painful blisters and lesions on the skin and mucous membranes and can cause severe eye problems." Esen Karamursel Akpek, M.D., Stevens-Johnson Syndrome, Johns Hopkins Med., https://www.hopkinsmedicine.org/health/conditions-and-diseases/stevens-johnson-syndrome (last visited Jan. 13, 2025).

Plaintiffs alleged that defendants deviated from "generally accepted standards" by prescribing Allopurinol, which was contraindicated; failing to take Carden's proper medical history; failing to diagnose, treat, prevent, and limit Carden's injuries; and failing to prescribe prophylactic medications, obtain necessary consults, and maintain and render medical care. Plaintiffs further alleged that Carden's death was "directly attributable to the Allopurinol," that Dr. Goyal's negligence caused Carden's death, and that JFK and SPPC were vicariously liable because Dr. Goyal was an "agent, servant, or employee" of both.

On September 21, 2022, Dr. Goyal and SPPC filed their answer and included the following Rule 4:5-3 Specialty Statement: "At all relevant times, these defendants practiced the medical specialties of Internal Medicine and Gastroenterology and their treatment of [Carden] involved the medical specialties of Internal Medicine and Gastroenterology." Dr. Goyal and SPPC's answer stated they were without knowledge or information sufficient to form a belief as to the truth of plaintiffs' factual allegations. On October 4, 2022, JFK filed its answer, likewise indicating that it lacked information sufficient to admit or deny the factual allegations. The sixty-day deadline for service of AOMs was November 20, 2022.

5

On November 10, 2022, plaintiffs provided each defendant with an AOM from Dr. Stella Jones Fitzgibbons, who is board certified by the American Board of Internal Medicine. In the AOM, Dr. Fitzgibbons certified that she was a "licensed physician . . . for a period in excess of five years specializing in the field of internal medicine"; that "[a]t the time of the occurrence that is the basis for the action in this case" she "specialized in the field of internal medicine"; that "during the year immediately preceding the date of the occurrence [she] devoted a majority of [her] professional time to the active clinical practice of internal medicine"; that she had "no financial interest in the outcome of [this] case"; and that "there is a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work of [defendants] fell outside professional treatment standards." Five days later, counsel for Dr. Goyal and SPPC objected to the AOM, stated that Dr. Fitzgibbons was unqualified to execute an AOM as to them, and requested a timely AOM "by a qualified physician." About a week later, JFK's counsel agreed with that position and noted that plaintiffs' claims against JFK were "premised on vicarious liability and/or apparent authority for Dr. Goyal."

6

Counsel appeared at a Ferreira conference[2] on November 28, 2022. Defendants' counsel explained that Dr. Fitzgibbons was unqualified because unlike Dr. Goyal, she was board certified in only internal medicine rather than in both internal medicine and gastroenterology, and because Dr. Fitzgibbons' medical practice had been limited to internal medicine. Amplifying his Specialty Statement, Dr. Goyal certified on December 12, 2022, that "[a]ll treatment that I rendered to [Carden] was provided as both an internist and as a gastroenterologist." He added, "[f]or example, my care and treatment of [Carden] included discussing, recommending and performing colonoscopies and esophagogastroduodenoscopy, as well as evaluating [Carden] for concerns such as rectal bleeding and black stool."[3] Dr. Goyal's certification is silent as to prescribing Allopurinol. The Ferreira judge directed defendants to file motions.[4]

---

[2] Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 154-55 (2003) (requiring a case management conference to "be held within ninety days of the service of an answer in all malpractice actions" to address discovery issues and compliance with the AOM statute and case law).

[3] The complaint does not specifically allege that Carden passed away from treatment related to colonoscopies, an esophagogastroduodenoscopy, rectal bleeding, or black stool. Instead, it alleges that her death was "directly attributable to the Allopurinol."

[4] Plaintiffs' counsel asserted that the Ferreira judge directed Dr. Goyal to certify whether he prescribed Allopurinol in his capacity as a

7

On December 21, 2022, Dr. Goyal and SPPC filed their motion to dismiss the complaint for failure to comply with the AOM statute.[5] Responding to plaintiffs' counsel's inquiry about whether Dr. Goyal prescribed Allopurinol in his "capacity as a gastroenterologist," counsel for Dr. Goyal stated:

> Dr. Goyal's [December 12, 2022] [c]ertification remains sufficient . . . as <u>it remains unclear at this juncture whether Dr. Goyal even prescribed [A]llopurinol to [Carden]</u>. We have not received the records from the hospital yet. It would be wholly improper for Dr. Goyal to execute any affidavit or certification asserting that he prescribed [A]llopurinol to [Carden] in any context without having any record that he in fact prescribed the medication. Nevertheless, as indicated by his [December 12, 2022] [c]ertification, Dr. Goyal remain[s] able to certify as to the <u>scope of his practice</u> in treating [Carden].
>
> [(emphases added).]

JFK filed a cross-motion seeking the same relief. Plaintiffs opposed those motions.

---

gastroenterologist. Counsel for Dr. Goyal and SPPC contends that the <u>Ferreira</u> judge directed Dr. Goyal to certify that his "treatment involved gastroenterology." There is no transcript of the <u>Ferreira</u> conference.

[5] The next day, a judge granted JFK's motion to transfer the matter to Union County.

Plaintiffs argued that internists prescribe Allopurinol, not gastroenterologists. Dr. Fitzgibbons submitted a certification dated December 22, 2022, emphasizing that she was "aware of no known gastrointestinal condition that is treated by [A]llopurinol." Dr. Fitzgibbons certified that Carden's medical records reflect she "was prescribed [A]llopurinol to treat high uric acid levels," which according to Dr. Fitzgibbons "is not related to the gastrointestinal system." Dr. Fitzgibbons also certified that "[h]igh uric acid levels can cause gout or kidney stones, neither of which are gastrointestinal conditions." Plaintiffs' counsel had three other gastroenterologists review the action, and they concurred that this was not a case for a gastroenterology expert.[6]

Alternatively, plaintiffs argued that Dr. Fitzgibbons was qualified to execute the AOM and that, given defendants' Specialty Statement, an AOM from an internist is sufficient. (relying on Buck, 207 N.J. at 391 ("A physician may practice in more than one specialty, and the treatment involved may fall

---

[6] Todd Eisner, M.D. ("I am familiar with the prescribing of [A]llopurinol and am aware of no known gastrointestinal condition that is treated by [A]llopurinol."); Stuart Finkel, M.D. ("[T]here [does] not appear to be any [g]astrointestinal issues for me to consider."); and Bruce Salzburg, M.D. ("[T]here does not appear to be any [gastroenterology] issues."). Plaintiffs' counsel certified that Dr. Salzburg made that statement to him after reviewing the action because Dr. Salzburg was unable to provide a certification of his own. Dr. Eisner provided a certification, and Dr. Finkel provided an affidavit.

within that physician's multiple specialty areas. In that case, an [AOM] from a physician specializing in either area will suffice.")).

The trial judge denied the motions to dismiss the complaint. He found "that the 'care and treatment at issue' was the prescribing of Allopurinol, and the 'care or treatment at issue involves internal [medicine].'" (citing N.J.S.A. 2A:53A-41). But without the need to make that factual finding and relying on Buck, the trial judge concluded alternatively that plaintiffs complied with the AOM statute by submitting the AOM from Dr. Fitzgibbons, who is board certified in internal medicine.

Defendants moved for reconsideration. Dr. Goyal and SPPC submitted a certification by Meyer N. Solny, M.D., who is board certified in internal medicine and gastroenterology. Although the motion record remained unclear about whether Dr. Goyal prescribed Allopurinol, Dr. Solny certified "that there certainly is a use for Allopurinol in gastroenterology," that gastroenterologists "regularly prescribe Allopurinol," and that "it is not possible to bifurcate and segregate my knowledge as a gastroenterologist from that as an internist." Defendants also asserted that the trial judge misplaced reliance on Buck. The judge denied reconsideration.

The Appellate Division granted defendants' motion for leave to appeal from the orders denying their motions to dismiss and for reconsideration.

10

Reversing those orders, the appellate court disagreed with the trial judge and stated that the law instead required plaintiffs to "serve an AOM from a physician board certified in each of [Dr. Goyal's] specialties." Wiggins v. Hackensack Meridian Health, 478 N.J. Super. 355, 358 (App. Div. 2024). The Appellate Division concluded that the trial judge erred in resolving factual disputes about the treatment rendered. Id. at 371. And it determined that the language in Buck on which plaintiffs and the trial judge relied "was dicta and not controlling in the circumstances presented here."[7] Id. at 373.

We granted plaintiffs' motion for leave to appeal. 258 N.J. 164 (2024). We also granted the New Jersey Association for Justice (NJAJ) leave to appear as amicus curiae.

## II.

Plaintiffs argue that the Appellate Division misapplied our instruction in Buck that when a physician practices "in more than one specialty, and the treatment involved may fall within that physician's multiple specialty areas . . . an [AOM] from a physician specializing in either area will suffice." (quoting

---

[7] The appellate court remanded to address whether plaintiffs were entitled to a waiver under N.J.S.A. 2A:53A-41(c), which permits waiver from the Patients First Act under certain circumstances. Wiggins, 478 N.J. Super. at 376. We need not address whether those circumstances are present because Dr. Fitzgibbons' AOM complied with plaintiffs' obligations under the law.

11

207 N.J. at 391). Plaintiffs contend the appellate court incorrectly reasoned that this Court's decision in Nicholas v. Mynster, 213 N.J. 463 (2013), and the Appellate Division's recent holding in Pfannenstein v. Surrey, 475 N.J. Super. 83 (App. Div. 2023), supported its judgment. And finally, they assert that requiring plaintiffs to serve an AOM from a physician who is board certified in each of Dr. Goyal's specialties is inconsistent with the AOM statute's dual purposes.

Defendants contend that the Appellate Division thoroughly analyzed Buck, which they argue is distinguishable, and further assert that the language in Buck on which plaintiffs rely is dicta and not controlling. Defendants maintain that Nicholas and Pfannenstein provide guidance on the application of the Patients First Act's kind-for-kind requirement, requiring an AOM from an "equivalently qualified physician," and Buck. Finally, they argue that dismissal of plaintiffs' complaint is consistent with the purposes of the AOM statute and that the appellate court's judgment is consistent with long-standing tort principles.[8]

---

[8] We need not discuss defendants' additional contention that we should address the Appellate Division's remand. Here, Dr. Fitzgibbons' AOM was sufficient to defeat the motions to dismiss. Therefore, the waiver principles of N.J.S.A. 2A:53A-41(c) are moot.

The NJAJ emphasizes that under the AOM statute, N.J.S.A. 2A:53A-41, and <u>Buck</u>, the trial judge correctly denied defendants' motions to dismiss and for reconsideration. Alternatively, NJAJ argues that the standard announced in <u>Brill v. Guardian Life Insurance Co.</u>, 142 N.J. 520, 540 (1995),[9] should apply to the disputed question of whether Dr. Goyal prescribed Allopurinol and if so, whether he did so as an internist, gastroenterologist, or both. NJAJ argues that plaintiffs are entitled to reasonable inferences that the alleged malpractice "falls within internal medicine."

## III.

We review a trial court's construction of a statute de novo. <u>Libertarians for Transparent Gov't v. Cumberland County</u>, 250 N.J. 46, 55 (2022). In that inquiry, we look to the Legislature's intent as expressed in the statute's plain terms. <u>Id.</u> at 54 (citing <u>DiProspero v. Penn</u>, 183 N.J. 477, 492-93 (2005)). We

---

[9] In <u>Brill</u>, this Court held,

> [u]nder this new standard, a determination whether there exists a "genuine issue" of material fact that precludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged dispute in favor of the non-moving party.
>
> [142 N.J. at 540.]

13

also review de novo a trial court's interpretation of a court rule, using "ordinary principles of statutory construction to interpret the court rule[]." DiFiore v. Pezic, 254 N.J. 212, 228 (2023) (quoting State v. Robinson, 229 N.J. 44, 67 (2017)).

IV.

In 1995, the AOM statute was one of several bills passed as part of a tort reform package that balanced "a person's right to sue and controlling nuisance suits." Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 149 (2003) (quoting Palanque v. Lambert-Woolley, 168 N.J. 398, 404 (2001)). Under N.J.S.A. 2A:53A-27, a medical malpractice plaintiff must show that the complaint is meritorious by obtaining an affidavit from "an appropriate licensed person" attesting to the "reasonable probability" of professional negligence. The affidavit must be provided to the defendant within sixty days of the filing of the answer or, for good cause shown, within an additional sixty-day period. N.J.S.A. 2A:53A-27. A "plaintiff's failure to serve the affidavit within 120 days of the filing of the answer is considered tantamount to the failure to state a cause of action, subjecting the complaint to dismissal with prejudice." Ferreira, 178 N.J. at 150 (citing N.J.S.A. 2A:53A-29). The dual purposes of the AOM statute are "to weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious

14

claims will have their day in court." Id. at 150 (quoting Hubbard v. Reed, 168 N.J. 387, 395 (2001)).

The Legislature enacted the Patients First Act in 2004, which supplemented the AOM statute by including additional requirements for a plaintiff's AOM in a medical malpractice case. See L. 2004, c. 17, § 7 (codified at N.J.S.A. 2A:53A-41). The basic idea behind N.J.S.A. 2A:53A-41 is that the individual who executes the AOM in a medical malpractice case "'be equivalently-qualified to the defendant' physician." Buck, 207 N.J. at 389 (quoting Ryan v. Renny, 203 N.J. 37, 52 (2010)); see also N.J.S.A. 2A:53A-27 (amended concurrently with the enactment of the Patients First Act, see L. 2004, c. 17, § 8, to specify that, "[i]n the case of an action for medical malpractice, the person executing the affidavit shall meet the requirements of a person who provides expert testimony or executes an affidavit as set forth in [N.J.S.A. 2A:53A-41]."). Thus, N.J.S.A. 2A:53A-41 adds to the AOM statute the "equivalently qualified" requirement for an AOM in a medical malpractice case. See Buck, 207 N.J. at 392 ("The 2004 amendments to the [AOM] statute added an extra level of complexity to the obligations placed on plaintiffs' attorneys . . . ."). The "equivalently qualified" requirement is known as the "kind-for-kind" rule. See id. at 389.

15

N.J.S.A. 2A:53A-41 recognizes three categories of credentialed physicians embodying the kind-for-kind rule:

> (1) those who are specialists in a field recognized by the American Board of Medical Specialties (ABMS) but who are not board certified in that specialty; (2) those who are specialists in a field recognized by the ABMS and who are board certified in that specialty; and (3) those who are "general practitioners."
>
> [Ibid.; see also N.J.S.A. 2A:53A-41(a), (b).]

As to the first two categories and pertinent to the issues on appeal, N.J.S.A. 2A:53A-41(a) provides in part that,

> [i]n an action alleging medical malpractice, a person shall not . . . execute an affidavit pursuant to the provisions of [the AOM statute] on the appropriate standard of practice or care unless the person is licensed as a physician . . . and meets the following criteria:
>
> > a. If the party against whom or on whose behalf the testimony is offered is a specialist or subspecialist . . . and the care or treatment at issue involves that specialty or subspecialty . . . , the person providing the testimony shall have specialized at the time of the occurrence that is the basis for the action in the same specialty or subspecialty, . . . , as the party against whom or on whose behalf the testimony is offered, and if the person against whom or on whose behalf the testimony is being offered is board certified and the care or treatment at issue involves that board specialty or subspecialty . . . , the expert witness shall be:

16

(1) a physician credentialed by a hospital to treat patients for the medical condition, or to perform the procedure, that is the basis for the claim or action; <u>or</u>

(2) a specialist or subspecialist . . . who is <u>board certified</u> in the same <u>specialty or subspecialty</u>, . . . , and during the year immediately preceding the date of the occurrence that is the basis for the claim or action, shall have <u>devoted a majority of his professional time to either</u>:

> (a) the active clinical practice of the same health care profession in which the defendant is licensed, and, if the defendant is a specialist or subspecialist . . . , the <u>active clinical practice</u> of that <u>specialty or subspecialty</u> . . . ; <u>or</u>
>
> (b) <u>the instruction of students</u> . . . in the same health care profession in which the defendant is licensed . . . and, if that party is a specialist or subspecialist . . . , in the same <u>specialty or subspecialty</u> . . . ; or
>
> (c) both.

[N.J.S.A. 2A:53A-41 (emphases added).]

Thus, when a defending physician is a "specialist or subspecialist" recognized by the ABMS, and the "care or treatment at issue involves that specialty or subspecialty," the challenging expert shall have specialized in the same "specialty or subspecialty." N.J.S.A. 2A:53A-41(a).

17

Similarly, when a defending physician "practices in an ABMS specialty" and "is board certified in that specialty" (like here), "the challenging expert must have additional credentials." Nicholas, 213 N.J. at 482. For those physicians who are specialists in a field recognized by the ABMS and who are board certified in that specialty, the challenging expert "must either be credentialed by a hospital to treat the condition at issue, N.J.S.A. 2A:53A-41(a)(1) . . . , or be board certified in the same specialty in the year preceding 'the occurrence that is the basis for the claim or action,' N.J.S.A. 2A:53A-41(a)(2)." Ibid.

In Buck, the defending physician, alleged by the plaintiff to have negligently prescribed a sleep medication, was board certified in emergency medicine and was practicing as a family-medicine specialist at the time he treated the plaintiff. 207 N.J. at 382-83. There was no Ferreira conference. Id. at 382. The plaintiff provided an AOM from a specialist in emergency medicine and an AOM from a psychiatrist, but nothing from a family medicine practitioner. Ibid. Granting summary judgment to the defendant, the trial judge found that the treatment did not involve emergency medicine and that the psychiatrist's AOM was insufficient. Id. at 387. The Appellate Division affirmed. Id. at 383.

18

On leave to appeal in Buck, this Court stated, as a preliminary matter, that "[t]his case is a reminder of the important role that Ferreira conferences play in ensuring that the [AOM] statute fulfills its objective of weeding out unmeritorious cases rather than worthy ones." Id. at 393. Additionally, this Court did not resolve whether the plaintiff's AOMs were sufficient. Id. at 395. Instead, this Court remanded and directed the trial judge to conduct a Ferreira "conference and decide anew the adequacy of [the] plaintiff's [AOMs]." Ibid.

Recognizing that the trial judge in Buck had sorted out the field of medicine and the treatment at the summary judgment stage rather than the Ferreira conference, this Court provided carefully considered guidance, binding on the lower courts, germane to when a defending physician practices in more than one specialty and when treatment involved may fall within those specialty areas. Id. at 387, 391, 393-96. "[M]atters in the opinion of a higher court which are not decisive of the primary issue presented but which are germane to that issue . . . are not dicta, but binding decisions of the court." 5 Am. Jur. 2d Appellate Review § 520 (2024); see also State v. Dabas, 215 N.J. 114, 136-37 (2013) ("Appellate and trial courts consider themselves bound by this Court's pronouncements, whether classified as dicta or not."); State v. Rose, 206 N.J. 141, 183 (2011) ("[T]he legal findings and determinations of a

19

high court's considered analysis must be accorded conclusive weight by lower courts. Our courts have consistently followed this rule." (footnote omitted)).

First, applying N.J.S.A. 2A:53A-41, the Buck Court explained that the initial inquiry must be whether the defending physician is a specialist or a general practitioner. 207 N.J. at 391. If the defending physician is a specialist, the next inquiry is whether the basis of the malpractice action "involves" the physician's specialty. Ibid. In the context of those inquiries, and particularly as to compliance with the AOM statute and kind-for-kind requirement contemplated by N.J.S.A. 2A:53A-41, this Court stated, "[a] physician may practice in more than one specialty, and the treatment involved may fall within that physician's multiple specialty areas. In that case, an [AOM] from a physician specializing in either area will suffice." Ibid.

Second, to ensure future compliance with the AOM statute and N.J.S.A. 2A:53A-41, the Court directed that a defending physician "include in his answer the field of medicine in which he specialized, if any, and whether his treatment of the plaintiff involved that specialty." Id. at 396. Responding to the Buck Court's directive, the Civil Practice Committee proposed amending Rule 4:5-3, which this Court adopted. The amended rule, effective September 2012, states in part that "[a] physician defending against a malpractice claim who admits to treating the plaintiff must include in his or her answer the field

20

of medicine in which he or she specialized at that time, if any, and whether his or her treatment of the plaintiff involved that specialty." R. 4:5-3.

Thus, there is generally no need for a Ferreira judge or motion judge to conduct a miniature hearing, take testimony, and make findings of fact about a physician's specialty and whether his treatment of the plaintiff involved that specialty. And judges need not apply Brill on motions to dismiss for failure to comply with the AOM statute regarding "the field of medicine in which the [physician is] specialized, if any, and whether his treatment of the plaintiff involved that specialty" because the defending physician's Rule 4:5-3 Specialty Statement generally resolves those factual questions.

V.

Application of those legal principles to the facts of this case is straightforward.

The text of N.J.S.A. 2A:53A-41 is clear. In an action alleging medical malpractice against a board-certified physician who is a "specialist or subspecialist" recognized by the ABMS, and when the "care or treatment at issue involves that specialty or subspecialty," the person executing the AOM must likewise be a board-certified "specialist or subspecialist" in the same "specialty or subspecialty" recognized by the ABMS as the defending physician. N.J.S.A. 2A:53A-41(a). A majority of the affiant's professional

21

time "during the year immediately preceding the date of the occurrence that is the basis for the claim or action" must be devoted to the "active clinical practice" of the defending physician's "specialty or subspecialty." Id. at (a)(2)(a).

It is undisputed that Dr. Goyal is board certified in the specialty of internal medicine and in the subspecialty of gastroenterology. N.J.S.A. 2A:53A-41(a) requires the affiant of the AOM to be board certified in the same "specialty or subspecialty" of the defending physician, not specialties or subspecialties. N.J.S.A. 2A:53A-41(a)(2)(a) requires the affiant of the AOM to devote a majority of that person's "active clinical practice" to the defending physician's "specialty or subspecialty," not specialties or subspecialties. Dr. Fitzgibbons meets those requirements. The plain language of N.J.S.A. 2A:53A-41 does not require an AOM to be from an individual with the same numerous specialties as the defending physician; instead, it requires only the same "specialty or subspecialty" in the singular (emphasis added).[10]

N.J.S.A. 2A:53A-41(a) also requires that the "care or treatment at issue involve[] [the defending physician's] specialty or subspecialty," not specialties

---

[10] At oral argument, when counsel for Dr. Goyal and SPPC was asked if the statute required an affiant to have the same multiple specialties as the defending physician, counsel conceded that there was no language in the statute imposing that requirement.

22

or subspecialties. Dr. Goyal's Specialty Statement verified that his treatment of Carden involved his medical specialties of internal medicine and gastroenterology. And his December 2022 certification, which amplified the Specialty Statement, stated, "[a]ll treatment that I rendered to [Carden] was provided as both an internist and gastroenterologist."

Dr. Goyal provided those statements in response to plaintiffs' detailed allegations. The complaint expressly alleged that "[Carden]'s death was directly attributable to the Allopurinol." The "care or treatment at issue" involves prescribing Allopurinol. Therefore, under N.J.S.A. 2A:53A-41(a), for purposes of the sufficiency of the AOM, Dr. Goyal's "care or treatment at issue" involves his "specialty or subspecialty" of internal medicine and gastroenterology, as stated in his Specialty Statement.

At the Ferreira conference and during the motions, the parties debated whether Dr. Goyal treated Carden as an internist, a gastroenterologist, or both. Plaintiffs argued that he prescribed Allopurinol as an internist. After the Ferreira conference, Dr. Goyal's counsel stated, "it remains unclear at this juncture whether Dr. Goyal even prescribed [A]llopurinol to [Carden]," since

23

he had not seen JFK's records.[11] Instead, his counsel relied generally on Dr. Goyal's certification, in which he admitted to having treated Carden as an internist and as a gastroenterologist. Indeed, on reconsideration, Dr. Goyal submitted Dr. Solny's certification, who opined "that there certainly is a use for Allopurinol in gastroenterology," that gastroenterologists "regularly prescribe Allopurinol," and that, as someone "Board Certified in both internal medicine and gastroenterology, it [was] not possible to bifurcate and segregate [Dr. Solny's own] knowledge as a gastroenterologist from that as an internist."[12]

Regardless, as to the threshold issue of whether plaintiffs' AOM is sufficient to survive a motion to dismiss, Dr. Goyal's Specialty Statement and his later certification verify that his treatment of Carden involved his medical specialties of internal medicine and gastroenterology. Under <u>Buck</u>, when "the treatment involved may fall within [a] physician's multiple specialty areas" --

---

[11] Presumably Dr. Goyal's own medical records would answer whether he prescribed Allopurinol from September 4 to September 8, 2020, which according to the complaint was after JFK discharged Carden.

[12] Defendants submitted Dr. Solny's certification for the first time on reconsideration and argued generally that gastroenterologists also prescribe Allopurinol. Dr. Goyal had certified only that "[a]ll treatment that I rendered to [Carden] was provided as both an internist and as a gastroenterologist." As stated earlier, Dr. Goyal's December 2022 certification was silent about whether he himself prescribed Allopurinol as an internist, gastroenterologist, or both, and indeed it did not mention Allopurinol at all.

24

as is the case here -- "an [AOM] from a physician specializing in <u>either area</u> will suffice." 207 N.J. at 391 (emphasis added). Therefore, Dr. Fitzgibbons' AOM complies with the AOM statute, N.J.S.A. 2A:53A-41(a)(2)(a), and <u>Buck</u>, neither of which require an AOM from an individual matching all areas of practice if a defending physician practices in multiple specialty areas. Accordingly, the trial judge correctly denied defendants' motions.

Our holding that an AOM that falls within any of a defending physician's specialties is sufficient comports with the purposes underlying the AOM statute as previously explained by this Court in <u>Buck</u>. "[T]here is no legislative interest in barring meritorious claims brought in good faith[.]" <u>Buck</u>, 207 N.J. at 393 (alterations in original) (quoting <u>Ferreira</u>, 178 N.J. at 50-51). It is well known that "the Legislature did not intend 'to create a minefield of hyper-technicalities in order to doom innocent litigants possessing meritorious claims.'" <u>Id.</u> at 393-94 (internal quotation marks omitted) (quoting <u>Ryan</u>, 203 N.J. at 51). At this stage in the case, a plaintiff need only be guided by a defending physician's Specialty Statement and provide an AOM from an individual in one of the specialty areas involved in the defending physician's treatment of the plaintiff, not jump through hoops to

find an exact match of all specialty practice areas to survive a motion to dismiss.[13]

We disagree with the notion that this Court's opinion in Nicholas and the Appellate Division's decision in Pfannenstein altered Buck. In Nicholas, the AOMs were executed by physicians who did not meet the kind-for-kind requirement of N.J.S.A. 2A:53A-41. 213 N.J. at 468. The defending physicians were board certified in emergency medicine and family medicine. Id. at 467. The plaintiff submitted AOMs from a physician "Board Certified in the medical specialty of Internal Medicine, Pulmonary Diseases, Critical Care, and Undersea & Hyperbaric Medicine," and from another physician who was board certified in internal medicine. Id. at 471. And in Pfannenstein, the defending physicians specialized in internal medicine, but the plaintiff submitted an AOM from a hematologist. 475 N.J. Super. at 90. Those cases left untouched our guidance in Buck, which was germane to situations in which a plaintiff submits an AOM against a defending physician who practices in multiple specialty areas and the treatment at issue may fall within those specialty areas. 207 N.J. at 391.

_____

[13] Indeed, plaintiffs demonstrated good faith by providing, in further support of their argument that the AOM from Dr. Fitzgibbons was sufficient, multiple certifications from physicians to show that Dr. Goyal's alleged prescription of Allopurinol was not a gastroenterology issue.

26

VI.

Finally, we once again emphasize that our reversal furthers the fundamental purposes of the AOM statute, which are "to weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court." Ferreira, 178 N.J. at 150 (quoting Hubbard, 168 N.J. at 395). Although application of N.J.S.A. 2A:53A-41 and Buck have ensured that this matter will proceed on the merits, plaintiffs are still left to their proofs. Our holding in no way relieves plaintiffs from demonstrating Dr. Goyal's professional negligence at trial; we resolve only the threshold issue of the sufficiency of plaintiffs' AOM.

At trial, to prove medical malpractice took place, "a plaintiff must present expert testimony establishing (1) the applicable standard of care; (2) a deviation from that standard of care; and (3) that the deviation proximately caused the injury." Haviland v. Lourdes Med. Ctr. of Burlington Cnty., Inc., 250 N.J. 368, 384 (2022) (internal quotation marks omitted) (quoting Nicholas, 213 N.J. at 478). "With rare exception, expert testimony is needed to establish the standard of care." Morlino v. Med. Ctr. of Ocean Cnty., 152 N.J. 563, 578 (1998). Jurors cannot guess about the applicable standard of care by which to judge the alleged negligence of a defending physician. See Model Jury Charges (Civil), 5.50A, "Duty and Negligence" (approved Mar. 2002). Jurors

27

determine the applicable medical standard from the testimony of experts, and it is for the jury to resolve any conflict that arises in that testimony.  Ibid.

## VII.

We therefore reverse the Appellate Division's judgment, reinstate the trial court orders denying defendants' motions to dismiss and motions for reconsideration, and remand for further proceedings.


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, NORIEGA, and HOFFMAN join in JUSTICE FASCIALE's opinion.