NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0056-24

WILLIAM CANO and
RAYMOND BONELLI,
on their own behalf and
on behalf of all similarly
situated employees,

      Plaintiffs-Respondents,

v.

COUNTY CONCRETE
CORPORATION,

      Defendant-Appellant.

> **APPROVED FOR PUBLICATION**
>
> **January 28, 2026**
>
> **APPELLATE DIVISION**

Argued October 20, 2025 – Decided January 28, 2026

Before Judges Sabatino, Walcott-Henderson and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1365-19.

Katharine W. Fogarty argued the cause for appellant (Kaufman Dolowich, LLP, attorneys; Katherine W. Fogarty and Eileen M. Ficaro, on the briefs).

Raymond M. Baldino argued the cause for respondents (Zazzali, PC, attorneys; Raymond M. Baldino, of counsel and on the brief).

The opinion of the court was delivered by

BERGMAN, J.A.D.

In this case of first impression, we address whether the New Jersey Earned Sick Leave Law ("ESLL"), N.J.S.A. 34:11D-1 to -13, requires defendant County Concrete Corporation to provide paid sick leave to its employees, plaintiffs William Cano and Raymond Bonelli ("named plaintiffs") on behalf of themselves and other similarly situated employees ("unnamed plaintiffs").[1] We further examine the qualifications in order for employers to utilize the "construction industry" exemption at N.J.S.A. 34:11D-1 as well as the procedural and legal standards required to assert ESLL claims and obtain damages for similarly situated employees pursuant to N.J.S.A. 34:11D-5 and N.J.S.A. 34:11-56a.

Defendant appeals from a Law Division order granting plaintiffs partial summary judgment determining defendant's leave policies were non-compliant with the employee notice requirements of the ESLL. Defendant also appeals from the trial court's final judgment after a bench trial determining defendant was not entitled to the "construction industry" exemption, its paid leave policy was non-compliant with several sections of the ESLL, and the post-trial damages award to the unnamed plaintiffs comprising of 103 similarly situated employees. Having considered the parties' arguments, the extensive factual

---

[1] We collectively refer to the named and unnamed plaintiffs as "plaintiffs."

A-0056-24

record, and applicable legal principles, we affirm.  Further we refer proposed pre-trial procedures concerning ESLL claims to the Civil Practice Committee for consideration.

I.

The ESLL was enacted as L. 2018, c. 10 and took effect October 29, 2018.[2]  It provided expansive paid sick leave rights to employees statewide.  In his press release concerning the ESLL, Governor Murphy declared:

> There is no reason anyone should have to choose between economic security and their health.  After today, New Jerseyans will no longer have to face such a choice.  I am proud to sign into law one of the strongest earned leave protections in the country for every hardworking employee who deserves the basic right of a paid sick day.
>
> [Press Release, Off. of the Governor, Press Release for A1827 (May 2, 2018) (on file with N.J. State Archives).]

---

[2]  Assembly Bill A3451, was passed by both houses of the Legislature on January 12, 2026, and was signed by the Governor on January 17, 2026.  The amendment expanded the New Jersey Family Leave Act ("NJFLA"), N.J.S.A. 34:11B-1 to -16, by reducing the numerical employee threshold for job protection.  The changes also provided employees eligible for leave under the ESLL, NJFLA and temporary disability benefits the right to choose the order in which these types of leave are taken.  S. 2950/A. 3451 (2026).  The amendment takes effect six months after its enactment.  The amendment does not affect the issues raised in this appeal.

He noted New Jersey joined "a select group of states—nine plus the District of Columbia—that have enacted paid sick leave."  The Governor added:

> The bill further permits employers to create more generous policies that provide additional leave time. Employees may use paid sick leave for:  [d]iagnosis, treatment, or recovery from a mental or physical illness or injury, or preventive care, for the employee or a family member[;] [o]btaining services if the employee or a family member is a victim of domestic or sexual violence[;] [c]ircumstances arising from a public health emergency[; or] a school-related meeting or event with regard to the employee's child.

[Ibid.]

Defendant's Business and Leave Policies

Defendant operates as a supplier of sand, gravel, and redi-mix concrete, with five worksites in Kenvil, East Orange, Oxford, and two locations in Morristown.  The named plaintiffs were employed as hourly drivers at the Kenvil worksite and also served as union shop stewards for International Brotherhood of Teamsters, Local 863.

Prior to their varied expiration dates, defendant's employees worked under five different collective bargaining agreements ("CBAs") covering separate groups of workers at the company's various worksites.  For employees under the Kenvil Sand and Gravel CBA and Morristown and Kenvil redi-mix CBA—the majority of the workers represented in this action—the expiration

4

of the CBA occurred on January 15, 2019. For employees under the Oxford and Sussex CBAs, as well as the Landi CBA, the expiration occurred on January 15, 2020. For employees covered under the East Orange and Flemington CBAs, the expiration occurred on January 15, 2021. The named plaintiffs specifically worked under the Kenvil redi-mix CBA. All the CBAs provided for three days bereavement leave, six paid holidays, and vacation time to be calculated through specific provisions in the CBA.

Under defendant's policies, employees were required to request vacation time before April 16 of each year, which was subject to approval at defendant's discretion, available and scheduled in accordance with seniority, and subject to defendant's rescheduling. After April 16, any request for vacation required a minimum of one week's advance notice subject to rescheduling by defendant based on business needs. Vacation pay was available as zero days for employees with less than one year's tenure, five days for those with one to three years tenure, ten days for those with more than three years, and fifteen days for a certain group of employees who have been grandfathered.

This Litigation

Approximately five months after the CBA governing their leave time lapsed on January 15, 2019, plaintiffs filed a complaint against defendant, seeking damages and attorneys' fees related to alleged violations by defendant

in providing paid sick leave as required by the ESLL. Plaintiffs' complaint also included "other similarly situated employees" as plaintiffs.

Defendant filed its answer, raising an exemption from the requirements of the ESLL because its employees were in the "construction industry" and "were under contract pursuant to and under a [CBA]" pursuant to N.J.S.A. 34:11D-1. Defendant asserted other affirmative defenses including its "vacation" leave policy was compliant with the ESLL as it qualified as paid time off ("PTO") under N.J.S.A. 34:11D-2(b).

During the discovery process, plaintiffs sought production of payroll records, policy documents, and communications regarding leave across all worksites, ultimately obtaining more than 27,000 pages of plaintiffs' payroll records in discovery.

Partial Summary Judgment

After the conclusion of discovery, plaintiffs moved for summary judgment, contending defendant's leave policies were not compliant with the ESLL because defendant failed to provide statutory notice of ESLL rights to its employees as required by N.J.S.A. 34:11D-7 and its "vacation" leave policy was not PTO nor compliant with the ESLL's calculation methodology for accruing sick leave under N.J.S.A. 34:11D-2(b). Defendant cross-moved for summary judgment, arguing it was exempt because its employees were "not

6

under the statute" because its employees were in the "construction industry," were under CBAs and its leave policies were compliant with the ESLL. Defendants alternatively argued that genuine factual disputes existed, precluding the grant of summary judgment to plaintiffs.

In a written decision, the motion court granted partial summary judgment to plaintiffs on liability only, finding defendant violated the ESLL in one respect, by failing to post the statutory written notice as required by N.J.S.A. 34:11D-7. The motion court rejected plaintiffs' other grounds, finding genuine factual issues existed concerning whether defendant "maint[ained] [] unlawful policies" or that it "fail[ed] to maintain records of ESLL leave" for its employees. The motion court further denied defendant's cross-motion. Defendant's subsequent motion for reconsideration was denied, and we denied defendant's application for leave to appeal. Cano v. County Concrete Corp., No. M-5191-21 (App. Div. June 23, 2022).

Trial and Judgment

Pre-trial, defendant moved in limine to preclude evidence or argument related to the similarly situated employees, or an award of damages to any outside named plaintiffs. The trial court denied the motion, relying on the language in N.J.S.A. 34:11-56a25, which permits an employee "to maintain the

7

action . . . on behalf of himself or other employees similarly situated" and based on economy of litigation.

Subsequently, a three-day bench trial was held in September 2022. At trial, the named plaintiffs presented evidence and witness testimony they were denied paid leave required by the ESLL and contended defendant's PTO policy was not compliant with the statute in several respects.

After trial concluded, the court determined in a written decision that "defendant has not complied with the ESLL" by virtue of its failure: (1) to provide ESLL required notices pursuant to N.J.S.A. 34:11D-7 (concurring with the prior partial summary judgment order); (2) to maintain records pursuant to N.J.S.A. 34:11D-6; and (3) to provide plaintiffs ESLL benefits pursuant to N.J.S.A. 34:11D-2 and -3. The court entered judgment of $9,120 in favor of plaintiff Bonelli and $8,880 in favor of plaintiff Cano. The trial court calculated these individual awards by applying named plaintiffs hourly rate multiplied by forty hours for the paid time each was entitled for the years they were employed by defendant after the statute took effect and their respective CBAs expired, plus an additional 200 percent in liquidated damages as required by N.J.S.A. 34:11-56a25. The judgment also established further procedures for post-trial exchanges of information to determine the identity of the unnamed similarly situated plaintiffs, whether those plaintiffs consented to

representation by the named plaintiffs' attorneys, and the amount of damages claimed by these unnamed plaintiffs based on the damage calculation formula previously determined by the court for the named plaintiffs.

Based on these requirements, plaintiffs obtained certifications from 133 previously unnamed plaintiffs/employees, designating the named plaintiffs' counsel as their representatives. Following objections and outside negotiations, the parties entered a "Stipulation and Consent Judgment" which entered judgment against defendant in the amount of $758,898.38 as damages for the previously unnamed/similarly situated plaintiffs/employees based on the same formula utilized by the trial court for the named plaintiffs. The stipulation reserved defendant's right "to fully appeal any and all issues . . . in any way, including the award of damages to any similarly situated employee, and that nothing contained in this Stipulation and Consent Judgment constitutes and admission of liability or other wrongdoing by [d]efendant."

Following plaintiffs' motion for counsel fees, the court entered a final judgment in favor of all plaintiffs for $1,368,322.29. The judgment was comprised of the $758,898.38 in damages for the unnamed plaintiffs pursuant to the stipulation, $9,120 for plaintiff Bonelli, $8,880 for plaintiff Cano, and attorneys' fees to plaintiffs' counsel of $591,423.91 as permitted by the ESLL. The court set forth its reasoning in a written decision on that same date.

9

<u>This Appeal</u>

On appeal, defendant challenges both the order for partial summary judgment and the final judgment entered after trial, contending the motion and trial courts erred by determining: (1) defendant did not qualify for the ESLL's "construction industry" exemption; (2) defendant's leave policy, record keeping policy, and notice to employees violated the ESLL; (3) unnamed plaintiffs had standing to pursue collective claims at trial without class certification; (4) unnamed plaintiffs were permitted to introduce evidence of alleged damages at trial without proper foundation; and (5) unnamed plaintiffs were permitted to opt-in and present damages on a post-judgment basis.

## II.

After a bench trial, our "review of a trial court's fact-finding function is limited." <u>Seidman v. Clifton Sav. Bank, S.L.A.</u>, 205 N.J. 150, 169 (2011) (quoting <u>Cesare v. Cesare</u>, 154 N.J. 394, 411 (1998)). The factual findings and legal conclusions of the trial court are not disturbed unless the reviewing court is "convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." <u>Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am.</u>, 65 N.J. 474, 484 (1974). We owe no deference, however, to a trial court's interpretation of the law and the legal consequences that flow from established

10

facts. Gallenthin Realty Dev., Inc. v. Borough of Paulsboro, 191 N.J. 344, 358 (2007).

Our review regarding the applicability, validity or interpretation of a statute is de novo. In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 17 (2020). When construing a statute, our "paramount goal" is to discern the Legislature's intent. DiProspero v. Penn, 183 N.J. 477, 492 (2005). We must "look first to the statute's actual language and ascribe to its words their ordinary meaning." Kean Fed'n of Teachers v. Morell, 233 N.J. 566, 583 (2018). "'[T]he best indicator of [the Legislature's] intent is the statutory language,' thus it is the first place we look." Richardson v. Bd. of Trs., 192 N.J. 189, 195 (2007) (first alteration in original) (quoting DiProspero, 183 N.J. at 492). "If the plain language leads to a clear and unambiguous result, then our interpretive process is over." Ibid.

A.

We first address defendant's contention the court erred by holding defendant did not qualify for the "construction industry" exemption.

Under the ESLL:

> "Employer" means any person, firm, business, educational institution, nonprofit agency, corporation, limited liability company or other entity that employs employees in the State. . . . "Employer" does not include a public employer that is required to provide

11

its employees with sick leave with full pay pursuant to any other law, rule or regulation of this State.

[N.J.S.A. 34:11D-1.]

Employers are exempt from the requirements of the ESLL if its employees are "performing service in the construction industry that is under contract pursuant to a collective bargaining agreement. . . . " Ibid.[3]

The court found the statutory exemption for the construction industry in the ESLL was not specifically defined by the statute. Applying a plain meaning reading to the statute, the court determined defendant was a "material supplier," because it supplies sand, gravel, redi-mix concrete, and related products to builders, developers, and homeowners and "[could be] a manufacturer in the manufacturing industry." The court further determined defendant does not engage in the business of constructing houses, schools, or other structures. As a result, the court concluded the exemption did not apply to defendant based on the nature of its operations as a manufacturer/supplier rather than as a builder. We agree.

---

[3] Defendant argued in its merits brief that legislative action was pending concerning this portion of the statute but, to date, no legislation has been enacted which modifies any section of the ESLL.

The plain meaning and rational reading of the statute supports the court's finding. We further point to the North American Industry Classification System ("NAICS").[4] Under this classification system, there are twenty sectors which are represented by the first two digits of the NAICS code. Ibid. "Construction" is one such sector and utilizes "23" as its sector code; including the code "236000" which is a broad category for building construction. Ibid. "Manufacturing" is another sector code represented by the first two digits "32." Ibid. Redi-mix concrete for companies making and delivering concrete in a plastic state and using purchased or mined sand/gravel, such as defendant, are under the NAICS manufacturing sector and are specifically categorized under code "327320." Ibid. Based on this information, we conclude the defendant's NAICS classification is in manufacturing, not construction, and that the trial court did not err by finding defendant is not in the construction industry and is not entitled to an exemption from the ESLL under N.J.S.A. 34:11D-1. The

---

[4] NAICS is the standard used by federal statistical agencies to classify business establishments for the purpose of collecting, analyzing, and publishing statistical data related to the U.S. business economy. NAICS is based on a production-oriented concept, meaning that it groups establishments into industries according to similarity in the processes used to produce goods and services. www.census.gov/programs-surveys/ecomonic-census/year/2022/guidance/understanding-naics.html last visited January 20, 2026.

trial court's determination was based on a plain meaning reading of the statute as well as substantial, credible evidence in the record.

B.

We next turn to defendant's contention that the trial court erred by finding its leave policy, notice to employees and recordkeeping was not compliant with the ESLL. Specifically, defendant asserts its leave policy did not violate the ESLL because it's "vacation" policy was a compliant PTO policy under the ESLL at N.J.S.A. 34:11D-2(b) and as such alleviates it from the record keeping requirement in the statute. Defendant argues it demonstrated at trial that the policy and past practice of the company permitted employees to use vacation time for "anything they want," including but not limited to the leave categories required by the ESLL. Defendant further asserts its employees are provided with paid sick days and are not disciplined for taking a sick day. It contends its leave policies permit employees to take paid days off for family illness, or to attend an event at their child's school. We reject those contentions.

In relevant part, the ESLL states:

> (a) Each employer shall provide earned sick leave to each employee working for the employer in the State. For every 30 hours worked, the employee shall accrue one hour of earned sick leave[.] The employer shall not be required to permit the employee to accrue or

14

use in any benefit year . . . more than 40 hours of earned sick leave. . . .

(b) An employer shall be in compliance with this section if the employer offers [PTO], which is fully paid and shall include, but is not limited to, personal days, vacation days, and sick days, and may be used for the purposes of section 3 (C.34:11D-3) of this act in the manner provided by this act, and is accrued at a rate equal to or greater than the rate described in this section.

[N.J.S.A. 34:11D-2.]

Under the ESLL, leave may be used for personal illness or injury, care of family members, domestic/sexual violence, public health emergency, or school-related activities. N.J.S.A. 34:11D-3(a). Employers can also be deemed compliant with the ESLL by offering PTO, such as vacation or personal days, if such leave is usable for ESLL purposes and accrues at or above the statutory rate. N.J.S.A. 34:11D-2(b).

Employers are also required to post and provide individualized notice of ESLL rights to their employees, in English and other languages, N.J.S.A. 34:11D-7, and to retain records of employee hours worked and sick leave taken for five years. N.J.S.A. 34:11D-6. Failure to comply with the record retention requirement creates a presumption of a violation of the ESLL "absent clear and convincing evidence otherwise." Ibid.

A-0056-24

After our review of the record, we determine, as did the trial court, that defendant's "vacation policy" did not qualify as an allowable PTO leave policy because it did not provide paid leave for all purposes required by the ESLL. Instead, paid leave was restricted to limited categories of vacation, bereavement, and holidays which were non-compliant with the categories of paid leave required by the ESLL at N.J.S.A. 34:11D-3(a). Despite arguments by defendant to the contrary, the evidence at trial showed its leave policy did not provide paid leave to aid family members "during diagnosis, care, or treatment of, or recovery from, the family member's [illness, injury, or other health condition,]" id. at (a)(2); for circumstances resulting from the employee's or family member's being a "victim of domestic or sexual violence," id. at (a)(3); or for "time needed by the employee in connection with a child of the employee to attend a school-related conference, meeting, function or other event requested or required by a school administrator, teacher, or other professional staff member responsible for the child's education." Id. at (a)(5). In addition, defendant's restrictive leave policy required a doctor's note for any illness-related absence, even for absences less than three days, which was not compliant with N.J.S.A. 34:11D-3(b).

We further determine sufficient evidence in the trial record supports the court's finding that employee requests for leave for ESLL-protected reasons

16

were sometimes denied and were at the sole discretion of management. We further conclude that defendant lacked a written policy covering the law's breadth, wrongly attempted to count existing vacation as satisfying ESLL obligations, and maintained accrual policy and use rules more restrictive than ESLL accrual requirements under N.J.S.A. 34:11D-2(a).

We conclude the trial court correctly found defendant's vacation/PTO policy[5] did not allow accrual and use consistent with ESLL requirements because employees were unable to use sick time unless or until they met certain vacation eligibility thresholds which were more restrictive than the accrual requirements of the ESSL. It is undisputed, for example, an employee who worked less than fifty days is not entitled to any paid sick leave under defendant's policy, wherein the ESLL requires one hour of paid sick leave for every thirty hours worked.

Further, the record demonstrates that defendant stopped its payroll system from calculating accrued ESLL leave for its employees, even after their CBAs expired and the ESLL took effect. The record supports the court's

---

[5] We reiterate defendant's policy on vacation time accrual, which it claimed was a compliant PTO policy under N.J.S.A. 34:11D-2(b), was zero days for employees with less than one year's tenure, five days for those with one to three years tenure, ten days for those with more than three years, and fifteen days for a certain group of employees who have been grandfathered.

A-0056-24

sound determination that both named plaintiffs were denied pay for days missed for doctor's appointments, despite having "vacation" PTO available. This plainly violates the requirements of N.J.S.A. 34:11D-3, which permits paid ESLL sick leave for several reasons, including doctor's appointments. In sum, substantial evidence presented at trial supports the trial court's conclusion that defendant's vacation policy was not a qualified PTO policy under N.J.S.A. 34:11D-2(b) and was, therefore, not erroneous.

We also concur with the trial court that defendant violated the notice and recordkeeping requirements of the ESLL. Both the summary judgment judge and the trial judge determined there was no adequate, conspicuous posting of ESLL rights as required by section N.J.S.A. 34:11D-6 and the only evidence of posting was at the Kenvil worksite. The trial court judge found that the notices allegedly posted were in an obscure location, not accessible to all employees, and no other locations posted the required notice.

Our de novo review of the summary judgment record clearly demonstrates no genuine issue of material fact existed as to whether defendant failed to post notices as required by the ESLL. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). After a full trial, the court also determined there was ineffective posting of the required notices, essentially concurring with the summary judgment court. In addition, the trial court found

18

no individualized or written notices were provided to employees of their ESLL rights, either in English or in Spanish as required. There is ample evidence to justify the trial court's findings that defendant failed to provide the required notice as there was substantial, credible evidence in the record to support defendant failed to adequately notify its employees under the ESLL at N.J.S.A. 34:11D-7. This non-compliance alone was violative of the ESLL.

The court further found defendant failed to maintain proper records as to its employees' available leave and leave used for ESLL-covered purposes as required by N.J.S.A. 34:11D-6. The record supports the trial court's determination that defendant's records lacked the required information. Defendant's payroll company reports did not document the hours worked by employees and the sick leave earned and used by their employees. Pay records, including paystubs, time detail reports, and summary reports did not reveal the employees use of ESLL sick leave. The court reasonably found that defendant failed to rebut by clear and convincing evidence it had not maintained or retained adequate records documenting hours worked by the employees and earned sick leave taken by the employees. In that scenario, the ESLL presumes an employer has failed to provide the earned sick leave required. See N.J.S.A. 34:11D-6. Again, substantial evidence in the record

19

supports this determination and we glean no error arising from the trial court's findings.

C.

We now address defendant's contentions the trial court erred by (1) finding the unnamed plaintiffs had standing to pursue collective claims at trial without class certification; (2) permitting the unnamed plaintiffs to introduce evidence of alleged damages at trial without proper foundation, and (3) permitting the unnamed plaintiffs to opt in and present damages on a post-judgment basis.

Defendant asserts the unnamed plaintiffs had not certified a class or designated a class representative prior to the entry of the court's post-trial order. Therefore, defendants contend the unnamed plaintiffs had no standing to assert any claims at trial or thereafter.

Defendant further asserts the trial court erred by admitting evidence concerning the unnamed plaintiffs alleged damages without proper foundation and permitting plaintiffs to engage in post-trial discovery. Defendant asserts these procedural flaws precluded it from confirming the true value of any potential damages for unnamed plaintiffs and from discerning the damages each class member was entitled to under the requirements of the ESLL resulting in a potential windfall to the alleged similarly situated employees.

20

Defendant also contends the court's determination resulted in prejudicial error as it effectively prohibited defendant from engaging in class discovery concerning whether the unnamed plaintiffs were entitled to pursue ESLL claims and to dispute the damages requested by unnamed plaintiffs. Defendant also argues class certification was required under Rule 4:32-2, or in the alternative, collective action certification was required under analogous principles of federal law[6] and the court's failure to require pre-trial certification was error.

1.

We first address defendant's contention the trial court erred by finding the unnamed plaintiffs had standing to pursue collective claims at trial without class certification. We note the court's determination permitting the inclusion of the unnamed plaintiffs first arose in its decision denying defendant's motion in limine to preclude "any and all evidence, testimony, argument or reference to the alleged class, any allegedly similarly situated employee, or alleged damages outside of plaintiffs Bonelli and Cano."

The court found:

---

[6] Plaintiffs also alternatively asserted collective action arguments but principally asserted that neither class nor collective action certification procedures were required.

21                                                    A-0056-24

> [M]y ruling is twofold. Most importantly, the statutory provisions [N.J.S.A. 34:11-D7 and N.J.S.A. 34:11-56a25] allow for a collective action to be brought, . . . and[] lacking a framework in the statute as to how that is to be done, . . . we[] will have to . . . figure it out on this . . . Lewis-and-Clark-like adventure into constructing an appropriate framework to do that, assuming the evidence is present and presented during the course of trial, or perhaps there may be supplemental proceedings that may be involved once this trial is concluded, pursuant to which other similarly-situated employees could do. . . . [W]hat was encompassed by the Legislature was economy of litigation so that these claims could be brought in a collective manner as opposed to individual pieces of litigation, and certainly that seems to be the view and policy that was in the mind of the Legislature when the statute was passed. So the motion is denied for that reason.

The court further addressed the standing of the "similarly situated employees" after trial and found plaintiffs sought relief on "behalf of themselves as well as all similarly situated employees in their [c]omplaint, and [f]irst [a]mended [c]omplaint." The court found it had already ruled, in its decision on defendant's motion in limine, that the case would proceed without the need or requirement that the case be certified as a class action, as it was not required by the language in the ESLL or N.J.S.A. 34:11-56a25. The trial court found the ESLL permits an employee to bring an action "for and on behalf of himself or other employees similarly situated," and allows for the designation of an agent or representative to maintain such an action.

However, the trial court also acknowledged the need for due process to defendant.  Therefore, before awarding damages to "similarly situated employees," it required the unnamed plaintiff employees to agree to representative counsel and further agree to be bound by the court's prior judgment.  The court determined this post-trial process was required to ensure only employees who affirmatively designated plaintiffs as their representatives were included in the judgment.

The ESLL provides a right of an employee to file a civil action if an employer violates its mandates.  The ESLL at N.J.S.A. 34:11D-5 states:

> Any failure of an employer to make available or pay earned sick leave as required by this act, or any other violation of this act, shall be regarded as a failure to meet the wage payment requirements of the 'New Jersey State Wage and Hour Law, [("NJWHL")]' [N.J.S.A. 34:11-56a to -56a30], or other violation of that act, as the case may be, and remedies, penalties, and other measures provided . . . shall be applicable, including, but not limited to, penalties provided pursuant to [N.J.S.A. 34:11-56a22 and -56a24], and civil actions by employees pursuant to . . . [N.J.S.A. 34:11-56a25], except that an award to an employee in a civil act shall include, in addition to the amount provided pursuant to [N.J.S.A. 34:11-56a25], any actual damages suffered by the employee as the result of the violation plus an equal amount of liquidated damages.

The NJWHL in pertinent part states:

> If any employee is paid by an employer less than the minimum fair wage to which the employee is entitled

23

under [this Act] . . . the employee may recover in a civil action the full amount of that minimum wage less any amount actually paid to him or her by the employer . . . and an additional amount equal to not more than 200 percent of [wages that were due].the amount of unpaid minimum wages or wages lost due to retaliatory action as liquidated damages plus costs and reasonable attorney's fees as determined by the court . . . . <u>An employee shall be entitled to maintain the action for and on behalf of himself or other employees similarly situated, and the employee and employees may designate an agent or representative to maintain the action for and on behalf of all employees similarly situated</u>. The employee may bring the action to recover unpaid minimum wages, or wages lost due to retaliatory action, or other appropriate relief, including reinstatement and payment of damages pursuant to this section, in the Superior Court.

[N.J.S.A. 34:11-56a25 (emphasis added).]

"Whether a party has standing to pursue a claim is a question of law subject to de novo review." <u>Cherokee LCP Land, LLC v. City of Linden Plan. Bd.</u>, 234 N.J. 403, 414 (2018). "Our courts generally take a liberal view of standing. . . . But, standing is not automatic." <u>N.J. Dep't of Env't Prot. v. Exxon Mobil Corp.</u>, 453 N.J. Super. 272, 291-92 (App. Div. 2018). "To have standing to maintain an action before the court, a party must have a sufficient stake in the outcome, a real adverseness with respect to the subject matter, and a substantial likelihood of some harm if the decision is unfavorable." <u>In re Project Authorization Under N.J. Reg. of Historic Places Act</u>, 408 N.J. Super. 540, 555-56 (App. Div. 2009).

24

The record demonstrates from the outset, in their complaint, the named plaintiffs proceeded on behalf of all similarly situated employees[7] as permitted in N.J.S.A. 34:11D-5 by its incorporation of N.J.S.A. 34:11-56a25. Plaintiffs specifically sought discovery from defendant concerning payroll and leave information surrounding the unnamed plaintiffs. The record further demonstrates defendants provided responses to plaintiffs' interrogatories concerning information relative to both named and similarly situated employees over two years prior to trial. Defendant's responses to plaintiffs' discovery requests specifically listed and included "time records . . . that identify all hours worked and time off for the relevant employees from the time the [CBAs] expired."

The record also reflects plaintiffs sought and defendant produced over 27,000 pages of records in discovery, most of which consisted of the unnamed employees' payroll records. At trial, over defendant's objection, numerous payroll documents were admitted and relied upon by the court in its decision concerning the accrual and use of ESLL leave by the unnamed plaintiffs, in

---

[7] In their interrogatory questions propounded upon defendants, plaintiff utilized the term "Class Employee" for the similarly situated plaintiffs.

particular all of the company's Paycom[8] reports for all employees showing the employees were not registered to take ESLL leave. In its decision, the court referenced evidence consisting of a chart documenting and calculating unpaid leave for all employees established violations of the unnamed plaintiffs' rights under the ESLL. Also, to establish the hours work and rate of pay of the unnamed employees, plaintiffs produced paystubs from the end of each applicable year for each plaintiff by way of more than 140 separate exhibits which were moved into evidence.

The trial court, referencing the statutory language and lack of controlling procedural precedent, required a post-trial process for written designation and certification of "similarly situated" employees, allowing all parties to verify their participation and proper inclusion. During this post trial process, defendant "stipulated"—although under reservation of its right to appeal—to the damages for the unnamed plaintiffs set forth in the final judgment.

We conclude the unnamed plaintiffs had sufficient standing to assert ESLL claims and were not required to certify a class at the pre-trial stage. The ESLL specifically permits the named plaintiffs to also pursue claims for similarly situated employees by its incorporation of N.J.S.A. 34:11-56a25

---

[8] Paycom was an outside payroll company hired by defendant to provide payroll services including the processing of employee leave time.

26

through N.J.S.A. 34:11D-5. Named plaintiffs specifically filed their action including "similarly situated employees" in the caption of the complaint and the parties engaged in significant pre-trial discovery concerning the unnamed plaintiffs prior to trial.

We further conclude neither the language at N.J.S.A. 34:11D-5 nor N.J.S.A. 34:11-56a25 specifically requires class certification or collective action procedures, the latter of which are typically brought in federal wage claims. Simply put, the enabling statutory language in N.J.S.A. 34:11-56a25 permits an employee to maintain the action for and on behalf of themself or other employees similarly situated, and the employee has the option to designate an agent or representative to maintain the action for similarly situated employees. There is no other requirement that affirmatively necessitates or requires plaintiffs to file or notify a defendant of the identity of the similarly situated employees by way of class certification or through class discovery as asserted by defendant. If the Legislature intended to require class certification or other procedures regarding "similar situated employees," it would have specifically stated this in the statute, which it did not.

2.

We now turn to defendant's assertion that the court considered evidence concerning the claims of unnamed plaintiffs without proper foundation and

A-0056-24

conclude there is no merit to this contention. The core basis of defendant's argument concerns the trial testimony of its director of human resources, Steve Parisi. Plaintiffs called Parisi as a witness in their case in chief and questioned him concerning company payroll and leave records of the unnamed plaintiffs. These records were kept by Paycom. Defendant's counsel objected to this testimony and the entry of the records into evidence based on lack of foundation. Defendant asserted Parisi did not have sufficient knowledge of the records. The court overruled defendant's objection, based on Parisi signing a certification attesting to the accuracy and truthfulness of the records as part of defendant's response to plaintiffs' discovery demands.

We review challenged evidentiary rulings for abuse of discretion. Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016). To find an abuse of discretion, the evidentiary ruling must be "so wide off the mark that a manifest denial of justice resulted." Ibid. (quoting Green v. New Jersey Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)). With respect to factual lay testimony, the foundation for its admission is simply the witness's personal knowledge. See N.J.R.E. 701; N.J.R.E. 602 ("[A] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); see also Neno v. Clinton, 167 N.J. 573, 585 (2001).

28

A-0056-24

After our careful review of the record, we conclude the court did not abuse its discretion in admitting the proffered evidence. The records identified the unnamed plaintiffs to show paid leave required by the ESLL was not provided to them by defendant. Parisi testified he had personal knowledge of the records and recognized them as company records provided from Paycom. We discern no error or abuse of discretion concerning the court's admission of this evidence through Parisi who we conclude had sufficient personal knowledge of the records through his familiarity and review of the records as director of human resources. We further point out defendant has neither asserted that the records were inaccurate or unreliable, nor pointed to any evidence showing it was unduly prejudiced by the admission of the information contained in the payroll and leave documents. Defendants only asserted that a foundational basis was lacking.

3.

We now address defendant's contention the court erred by permitting the unnamed plaintiffs to opt in as plaintiffs and present proof of damages on a post-trial basis. In this instance, rather than engaging in pre-trial discovery to determine information for the unnamed plaintiffs' claims, defendant chose to take a calculated risk by not engaging in detailed pre-trial discovery and moved to exclude the unnamed plaintiffs' claims through a motion in limine.

29

Based on the record before us, this pre-trial mechanism was the first time defendant raised its class certification argument during the approximate two and a half years the case was pending. We determine no evidence exists in the record demonstrating defendant was inhibited from requesting the names of all similarly situated employees and demanding plaintiffs to provide the basis for and the amount of damages they were claiming through pre-trial discovery. Nothing in the language of the ESLL or otherwise inhibits a party from requesting information concerning the unnamed plaintiffs as part of pre-trial discovery. We are satisfied that defendant's decision to forgo class certification, other pre-trial procedures, and additional pre-trial discovery, concerning the claims of the unnamed plaintiffs, is not a basis for reversal.

In addition, defendant has failed to demonstrate prejudice or an unjust result occurred from the court's findings, orders, and post-trial procedures. See R. 2:10-2 ("Any error or omission shall be disregarded . . . unless it is of such a nature as to have been clearly capable of producing an unjust result. . . ."). The record reflects defendant was fully aware of the potential claims and damages asserted by the unnamed plaintiffs based on the initial "similarly situated employees" designation in the caption of plaintiffs' complaint, as well as through the discovery responses defendant provided identifying the

A-0056-24

damages asserted by the unnamed plaintiffs through production of its payroll company records.

Procedural due process requires notice and an opportunity to be heard. Mettinger v. Globe Slicing Mach. Co., 153 N.J. 371, 389 (1998); see also Doe v. Poritz, 142 N.J. 1, 106 (1995) ("Due process is not a fixed concept . . . but a flexible one that depends on the particular circumstances. . . . Fundamentally, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner.").

The trial court provided defendant with fair notice and ample opportunity to be heard concerning the "opt in" of the unnamed plaintiffs. We note the trial court did not impose any restrictions on defendant's ability to engage in pre-trial discovery regarding identification and damage claims of the unnamed plaintiffs. Defendant was also provided with further protections through the procedural post-judgment safeguards fashioned by the trial court. These safeguards included requiring unnamed plaintiffs to provide a written designation naming representative counsel, bind them to any judgment entered, and provide defendant with an opportunity to challenge the designation and contest the quantum of damages. We determine these procedures were sufficient to protect defendant's due process rights.

31

We note N.J.S.A. 34:11-56a25 provides for appropriate credits/offsets for "any amount actually paid to him or her by the employer" but that defendant never pursued such offsets at trial or in the post-trial procedure determined by us to be appropriate herein. This is despite the fact that it had possession of all the records for the leave plaintiffs were actually paid during the relevant time periods. Hence, although the method utilized by the trial court to compute plaintiffs' damages was supported by the record, it may not be viewed as the "model" for other ESLL cases in the future.

III.

Based on the issues raised in this appeal and our determinations concerning the identification and inclusion of similarly situated employees in ESLL actions, we hereby refer these issues for consideration by the Civil Practice Committee to consider certain prospective safeguards be adopted for ESLL claims filed in the future.

We respectfully suggest a process be considered wherein the court holds a conference shortly after the matter is joined wherein plaintiffs asserting claims for similarly situated employees be required to disclose whether they intend to certify a class of employees under the ESLL. If so, we suggest the trial court could choose to set time limitations for class certification under Rules 4:32-1 to -5. If not, we suggest the court might choose to set an

A-0056-24

appropriate procedure and time limitations for identification of, and discovery surrounding, the "similarly situated" plaintiffs/employees. We suggest any policy or rule that may be adopted should not restrict the flexibility of trial courts to convene additional case management procedures to facilitate the discovery process and motion practice that may present in specific actions concerning ESLL claims.

We liken these suggested procedures to the safeguards required by our Supreme Court in Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144 (2003). There, the Court held that, to ensure that discovery related issues surrounding the Affidavit of Merit statute, N.J.S.A. 2A:53A-26 to -29, do not become sideshows to the primary purpose of the civil justice system—to shepherd legitimate claims expeditiously to trial—an accelerated case management conference must be held within ninety days of the service of an answer in all malpractice actions. Id. at 154. At the conference, the Court required the trial court to address all discovery issues and set appropriate procedures to resolve those disputes "to assist discovery . . . and promote the orderly and expeditious progress of the case." Id. at 155, citing R. 4:5B-2.

We suggest for the Committee's consideration a similar procedure for ESLL actions, which we anticipate will assist in the equitable and fair disposition of these claims by balancing the rights of aggrieved employees to

33

recover under the statute, and providing employers, alleged to have violated the statute, proper notice and a full opportunity to defend against these claims. Other effective measures, of course, may be identified, which we do not foreclose the Committee from considering.

In the matter before us, although defendant was not provided the type of early, pre-trial procedure we have suggested here, we conclude defendant was not prejudiced because it had reasonable notice of the claims of the similarly situated employees, had the opportunity to, and engaged, in discovery concerning these employees' claims, and were provided with the ability to defend the claims at trial and during the post-trial proceedings.

To the extent we have not addressed any of defendant's remaining arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0056-24